WILLIAM M. WOODALL, Appellant, *vs.* ALBERT PEDEN *et al.* Appellees.

*Opinion filed June 22, 1916—Rehearing denied October 5, 1916.*

1. DEEDS—*when deed from husband to wife is without consideration.* A deed made by a husband to his wife solely to escape prosecution for and to settle a felony charge which the wife was threatening to bring against him is without consideration, as such a contract is illegal and against public policy.

2. SAME—*general rule as to setting aside deed based upon an illegal contract.* Equity will not lend its aid to set aside a deed executed in pursuance of a contract which is illegal and against public policy if the parties have equally participated in the wrong and are equally at fault; but if the parties are not *in pari delicto,* equity may grant relief in case the grantor is comparatively innocent,—not for his sake but on grounds of public policy.

3. SAME—*what does not amount to a compromise of a doubtful claim.* The compromise of a doubtful claim, made in good faith, is sufficient consideration for a conveyance whether the claim is well founded or not, but there is nothing in the nature of a compromise where the claim is one which cannot be enforced under any state of proof, either in law or in equity, such as a threat to bring a criminal prosecution for a wrong for which the party obtaining the deed had no right of action whatever.

4. SAME—*when settlement of a suit does not bar right to have deed set aside.* Where a wife obtains a deed to land from her husband by threatening him with prosecution for his alleged criminal relations with her grand-daughter and the husband subsequently brings suit to set aside the deed, the settlement of such suit upon the basis of a conveyance to him by the wife of a life estate in the land does not bar his right to set aside the deed, where the settlement was induced by the same threats which induced the making of the deed.

5. SAME—*when a compromise of claim furnishes no consideration for deed.* If a party knows, or ought to know, that the claim

he is asserting has no foundation whatever and cannot be enforced upon any state of proof, either at law or in equity, the compromise of such claim furnishes no consideration for a conveyance of land.

6. LACHES—*defense of laches must be set up in some manner.* The defense of *laches,* in a chancery proceeding, must be set up either by demurrer, plea or answer, so that the complainant may amend his bill by inserting allegations accounting for the delay, as the question whether delay constitutes *laches* depends upon the circumstances of each particular case.

APPEAL from the Circuit Court of Christian county; the Hon. GEORGE W. CROW, Judge, presiding.

JOHN E. HOGAN, and SMITH & FRIEDMEYER, for appellant.

W. B. McBRIDE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, William M. Woodall, filed his bill in this case in the circuit court of Christian county against the appellees, Albert Peden and George W. Pearson, sons and devisees of Martha A. Woodall, deceased wife of complainant, praying the court to set aside a deed of 53 1/3 acres of land, made by the complainant to his wife on April 10, 1901, on the ground that the deed was obtained by threats to commence a criminal prosecution against the complainant, and was made to settle the charge, which was unfounded, and to avoid the criminal prosecution. The bill also alleged that on November 6, 1903, the complainant filed a bill against his wife to set aside the deed; that she renewed her threats of a criminal prosecution and by means thereof induced the complainant to dismiss his suit, and that the agreement to dismiss the suit was wholly without consideration and in furtherance of the original scheme of his wife to obtain the land. The defendants answered, denying that the deed was obtained by fraud and threats of

a criminal prosecution or in settlement of the charge made against the complainant, or that the agreement whereby the former bill was dismissed was obtained in furtherance of the original plan to obtain the property. The defendants also filed a plea setting up the dismissal of the former suit upon an agreement of the parties that the complainant should have a life estate in the premises. A general replication to the answer and plea was filed. The cause was referred to a special master in chancery to take the evidence and report the same to the court, and the chancellor, on hearing the evidence taken, dismissed the bill for want of equity.

The facts proved were as follows: William M. Woodall, the complainant, and Martha A. Forbin, were married in 1889. It was his second marriage and he had two children living, and she had had three or more previous marital experiences. The defendants, Albert Peden and George W. Pearson, were her sons by former marriages, and Peden had been married and had four children and one step-child. After the death of Peden's wife his four children (who were grandchildren of Martha A. Woodall) and the step-child were taken to live at the complainant's home, and one of the four children was Edna Peden. Martha A. Woodall owned 160 acres of land in Crawford county and spent the greater part of her time there. When she was at complainant's home the relations of the parties were unpleasant, and when angry she was in the habit of using violent, profane and abusive language to him and calling him vile and insulting names. In the spring of 1901 she charged him with criminal relations with Edna Peden, her grand-daughter, then about fifteen years old, on an occasion when the girl was at the barn gathering eggs. She threatened him with a criminal prosecution, and the charge was of a felony, as Edna was only fifteen years old. He and Edna denied the charge, and she also threatened Edna if she persisted in the denial. She went to the guardian of Edna and told him her

husband had either had, or attempted to have, criminal re-
lations with Edna and she thought he ought to be made to
settle. The guardian expressed doubts, from her statement,
whether any recovery could be had, and she told him that
she would threaten complainant with exposure and make
him make some kind of a settlement for her or the girl.
She urged the guardian to take some action as guardian,
but he declined and advised her to see the State's attorney
about any proposed criminal prosecution. She told differ-
ent witnesses that she was bringing a charge against her
husband; that she did not think he was guilty of the
charge, but she was going to hold it against him and get
out of him all she could; that she would break the old
man up if she lived long enough; that she had a good hold
on him; that he had assaulted her grand-daughter, Edna,
and that if the old man did not deed her that 53 acres she
was going to send him to the penitentiary for the deed he
had done. On April 10, 1901, she and complainant went
to a justice of the peace, where he first refused to sign a
deed of the 53 1/3 acres of land but afterward did so.
They were there first in the forenoon and he refused to
sign the deed, but in the afternoon they came back and he
signed and acknowledged it. There was no consideration
for the deed except the settlement of the threatened prose-
cution, and the relations of the parties were such as to
rebut any presumption of a gift to the wife. After the
deed was made Martha A. Woodall told witnesses that her
husband had given her the land to settle the matter; that
she caught him in the act, or attempted act, and made him
settle; that he had deeded the land to her and she was go-
ing to break him up; that she had compromised the trouble
and got it settled, and that she had got up a scheme to get
all the land the complainant had but had concluded the
best thing to do was to get the best part of it and let him
go, and she had made him come to time. In 1903 the com-
plainant filed his bill to set aside the deed, and it was·proved

by her statements that she then threatened to bring the
same old charge, and when she got him in the penitentiary
she would sue for alimony and break him up.  She talked
freely to the guardian and made use of threats of what she
would do if complainant did not settle the suit, and told
the guardian that she had got the complainant in a tight
place and she would make him give her something to set-
tle the suit.  While the suit was pending the complainant
and his wife went to her solicitor and told him they had
settled the suit and asked him to prepare a contract.  He
prepared a contract in triplicate, by which the wife was to
convey to the complainant a life estate in the land and the
suit was to be dismissed.  Each of the parties was furnished
with one copy of the contract and a third was filed in the
court and the suit was dismissed.  Afterward Martha A.
Woodall said to witnesses that she threatened her husband
with the old charge and got him to sign a contract to keep
the land during his lifetime and to come back to her at
his death; that he had started suit for possession of the
land but she had threatened him with the old charge and
made him sign a contract; that she had him coming her
way and had him scared or "buffaloed," or something like
that.  The complainant had competent counsel at the time
of the settlement, who advised the making of it.  The com-
plainant was examined and testified at length as a witness,
but he was not competent and none of the facts above re-
lated are derived from his testimony.

The deed made by complainant to his wife was with-
out consideration, was obtained solely by threats of a prose-
cution for a felony and was executed for the purpose of
escaping the prosecution and settling the charge.  Such a
contract is illegal and condemned by public policy, and a
court of equity will never lend its aid to enforce an agree-
ment of that kind while it is still executory, or interpose to
set aside a conveyance which has been executed by virtue
of the contract, if the parties have equally participated in

274 —20

the wrong and are equally at fault. If, however, the parties are not *in pari delicto,* equity may give relief to the one that is comparatively innocent. The court does not so much concern itself with the fortunes of the parties, or either of them, as it does with public policy that such contracts shall not be made and that no one shall take any advantage from the making of them, provided the conduct of either has been such as to receive consideration. The court will allow the remedy, not for the sake of the party who makes the objection but on grounds of public policy. (Pomeroy's Eq. Jur. secs. 402, 929.) The evidence justifies a belief that the complainant, who was protesting his innocence, submitted to the demands of his wife quite unwillingly and was comparatively without fault.

When the complainant had filed his bill to set aside the deed he compromised his claim on an agreement that his wife should convey to him a life estate in the land, which she did. The compromise of a doubtful right made in good faith is a sufficient consideration for a conveyance; and that is true regardless of the question whether the right was well founded or not. The actual right must be on one side or the other, and on which side makes no difference. If the fact alleged gave Martha A. Woodall any right of action the question whether she could have proved the necessary facts would have been immaterial, but there is nothing in the nature of a compromise where the claim made is one which could not be enforced under any state of proof, either in law or equity. Martha A. Woodall had no right of action of any sort or description, and could not have maintained an action, either at law or in equity, upon proof of the charge which she made. If the complainant was guilty he would have been subject to punishment, but for any wrong done to the grand-daughter, if there was any, his wife had no right of action at all. The conveyance was not made in settlement of any injury done to Edna, since the conveyance was not to her nor in trust

for her and she never derived any benefit whatever from it. The settlement of the suit was obtained by the same means as the deed,—by threats of a criminal prosecution; and the compromise agreement, therefore, by which Martha A. Woodall gave up a part of something to which she had no right at all, did not bar the complainant's right. If a party knows, or ought to know, that a claim which is compromised has no foundation whatever and cannot be enforced upon any state of proof, either in law or equity, it furnishes no consideration for a conveyance of land.

One reason advanced for sustaining the decree, and which is said to have induced the action of the chancellor, is that the complainant was guilty of *laches* in not earlier bringing this suit. The *laches,* if there was any, appeared on the face of the bill and could have been set up by demurrer. (*Kerfoot* v. *Billings,* 160 Ill. 563.) Whether delay constitutes *laches* depends upon the circumstances of each particular case. If there is apparent *laches* on the face of the bill and there is a demurrer on that ground, the complainant has an opportunity to amend his bill by showing an excuse for the delay. It is apparent, in view of what occurred before by way of intimidation, that the complainant may have had sufficient reason for not filing the bill against his wife, and he was at all times in possession of the property, which is a material circumstance. Whether it was essential that *laches* should be set up by demurrer, it was necessary to set it up either by demurrer, plea or answer, so that the complainant might amend his bill by inserting allegations accounting for the delay. (*School Trustees* v. *Wright,* 12 Ill. 432; *Dawson* v. *Vickery,* 150 id. 398.) The objection was not raised in this case and was therefore waived.

The decree is reversed and the cause is remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*