Good Hope State Bank, Appellee, v. Alice Beryl Kline and Pete Kline, Administrators of the Estate of Clarence P. Kline, Deceased, Appellants.

Gen. No. 9,193.

Heard in this court at the April term, 1939. Opinion filed January 15, 1940. Rehearing denied February 23, 1940.

FLACK & KERMAN and ROSWELL B. O'HARRA, all of Macomb, for appellants.

GUMBART & GRIGSBY, of Macomb, for appellee.

MR. JUSTICE FULTON delivered the opinion of the court.

On March 27, 1936, appellee, Good Hope State Bank, a corporation, filed a claim in the county court of McDonough county, against the Estate of Clarence P. Kline, deceased. By agreement the venue was changed to the circuit court of said county, and the case tried before the court, a jury having been waived.

The claim was in words and figures as follows:
"Estate of Clarence P. Kline
    to Good Hope State Bank, Dr.

"Amount due from Archie J. Applegate on note for $5,596.80 evidenced by judgment in Circuit Court of McDonough County, Illinois, March 20, 1930, under guarantee of December 1, 1933, copy of which is attached ...............................$9,112.12.

"Attached to the claim is an instrument which reads as follows:

"December 1st, 1933.

"GUARANTEE.

"For value received the undersigned, C. P. Kline, hereby guarantees to the Good Hope State Bank, Good

Hope, Illinois, the payment of a certain principal sum of $5,596.80 and all accruing interest thereon from the date of this guarantee, due to the Good Hope State Bank from Archie J. Applegate of Macomb, Illinois; this shall be a continuing guaranty to The Good Hope State Bank until full settlement of said obligation is received by said bank.

"C. P. KLINE (Seal)"

On the trial appellee, by leave of court, amended the claim on its face by striking out the word "March" and inserting in lieu thereof the word "May."

The leading facts show that on November 24, 1928, Archie J. Applegate executed a promissory note of that date payable to the appellee on demand for the principal sum of $5,725.13, with interest at 7 per cent and containing a warrant of attorney to confess judgment. On the back of this note appear two indorsements, as follows:

"Dec. 27, 1929, Pd. on Interest, $50.00.

"May 3, 1930, Pd. $128.33."

On May 20, 1930, a judgment was entered by confession in favor of appellee against Archie J. Applegate upon said note, for the sum of $6,999.31 and costs. Two executions were issued upon said judgment, but the returns failed to show any payments made thereon.

On or about December 1, 1933, A. J. Adams, a State bank examiner, visited the bank and told the directors that the above judgment was being carried as an asset of the bank and that it would have to be removed and the asset made good. He testified that he further told the directors, one of whom was the decedent, Clarence P. Kline, that after his examination was made he would not allow the bank to reopen until the assets he had mentioned were made good. That on Thanksgiving day the directors came to his house and agreed to make good the said assets; that Mr. Kline said that he would guarantee the Archie Applegate indebtedness to the

bank. That on December 1st he met Kline and Allison, president of the bank and prepared the guaranty which was later attached to the note as shown by claim of appellee; that Kline signed the guaranty and delivered it to Adams and that Adams left the original with the bank and attached a copy thereof to his report. At the same time the president of the appellee bank, Alvah Allison, put in the bank about $18,000 in cash to take care of some other objectionable notes. Allison received deferred certificates for the $18,000 put up by him, payable out of the assets of the bank before anything was payable to the stockholders, but no deferred certificates were issued to Kline for the guaranty. Kline died April 17, 1935.

Numerous grounds were urged by appellants as to why the judgment of the circuit court should be reversed, but as we view the case only one or two of them will need to be considered in this opinion.

Appellants contend that the sole consideration for the signing of the guaranty by Kline was to prevent the prosecution of his son-in-law, Archie Applegate, for the making of an alleged false financial statement in connection with the loan of the money represented by the Applegate note. The evidence on this point was as follows: Susie Hatch, a daughter of Kline, testified that the next day after her father's death, she and her brother Pete had a conversation with Mr. Allison, the president of appellee bank, and that he told them their father was too good to his children and that one thing he did was to keep Archie Applegate out of jail. That he also said their father had to save Archie from going to jail. She further testified that on March 17, 1938, she and her brother Pete went to the bank and she asked Allison what made her father sign the guaranty and that Allison replied, "To keep Archie Applegate out of a jam would be all I know." Pete Kline not only corroborated his sister as to the last conversation with Allison when he told them their father signed the guar-

anty to keep Archie out of a jam but also stated that in the summer after his father's death Allison told him that he didn't intend to file this claim against the estate of Clarence P. Kline and that he didn't think the estate owed that debt.

Allison on the stand did not deny any of said conversation. He repeatedly said he did not remember and he would not say that he did not make the statements testified to by the Kline children nor that he did make them. He testified that at the time the original note in this case was given by Archie Applegate, or at some time prior to the entry of the judgment, a financial statement was made by Archie Applegate; that he, Allison, later took that statement to the State's Attorney and talked with him about taking action against Applegate for a false property statement and whether they could prosecute Applegate with reference thereto. He further stated that he probably talked to Kline about what he had done; that he did not know whether Kline had told him that if he would not prosecute Applegate he, Kline, would guaranty the payment of the indebtedness, but that he, Allison, would not say that Kline did not so state. Allison was asked about many other and similar conversations with other parties and he repeatedly said he would not say that he did not make such statements or that he did. Most of these talks were with the father of Applegate, the attorneys for appellants and with Kline and related to plans for turning over the statement to the State's Attorney, indicting Archie and prosecuting same. Also conversations with Kline about suspending prosecution if he, Kline, would guarantee the indebtedness. After December 1, 1933, the date of the guaranty, there was no further talk of prosecution, because as Allison testified we got the note in shape so that the department would accept it.

So many times did Allison testify that he would not say he did not make certain material statements relating to this subject or that he did, that one must become

convinced that it really amounted to affirmative testimony on his part of the truth of such conversations.

While the appellee has wholly failed to comply with Rule 9, par. 2 of this court, providing that the appellees' brief must contain "a statement of the propositions by which appellee seeks to meet the alleged errors and to sustain the judgment or decree, or by which such errors are obviated," we find that it does contend that adequate consideration was given Kline for the execution of the guaranty in that the agreement between Kline and Allison whereby Kline would sign the guaranty and Allison would put $18,000 in cash in the bank, and take out objectionable paper of that amount, prevented the closing of the bank; that this arrangement was an advantage to Kline, a stockholder and director of the bank, in having the bank remain open and a going concern. Also that it might avoid a possible stockholder's liability.

The Applegate note was dated November 24, 1928. The judgment thereon was taken May 20, 1930. More than three years thereafter on December 1, 1933, the guaranty was executed. We have examined the record carefully and are impelled to believe that the real consideration for the execution of the guaranty was to stifle and prevent the prosecution of Archie Applegate because of an alleged false statement made by Applegate in procuring credit from the bank. Clarence Kline, who executed the guaranty in question, and Allison, the president of the bank, are the two persons who knew the details of the transaction surrounding the execution of the guaranty. Because of his death Kline could not testify, but the evasive and uncertain testimony of Allison, who appeared to have personal charge of the claim, together with the evidence of the Kline children, and the circumstances surrounding the entire transaction, lead us to the conclusion announced above.

Such an agreement was an attempt to suppress prosecution of a criminal offense and therefore illegal, void

and against public policy. Under such circumstances it did not constitute a valid consideration for the guaranty upon which the claim was based. As a general rule, if any part of an entire consideration for a promise be illegal, the whole contract is void. *Henderson v. Palmer,* 71 Ill. 579. A deed made by a husband to his wife to escape prosecution for a felony charge which the wife was threatening to bring against him is without consideration, as such a contract is illegal and against public policy. *Woodall v. Peden,* 274 Ill. 301. Where there is included in the compromise of civil injuries from a criminal act, some promise or agreement, express or implied, that the prosecution of the criminal case shall be suspended, the agreement is contrary to public policy and illegal. *Henderson v. Victor,* 268 Ill. App. 514.

Since the question we have discussed is the controlling one in our opinion, the judgment of the lower court is reversed and the cause is remanded to the circuit court of McDonough county with directions to enter a judgment for the appellants in accordance with this opinion.

*Reversed and remanded with directions.*