484 F.2d 602
 Iberia HAMPTON, Administratrix, etc. Verlina Brewer, etc.,
and Deborah Johnson et al., Plaintiffs-Appellants,
v.
The CITY OF CHICAGO, COOK COUNTY, ILLINOIS and Edward V.
Hanrahan et al., Defendants-Appellees.
Fannie Mae CLARK, Administratrix of the Estate of Mark
Clark, Deceased, Plaintiff-Appellant,
v.
The CITY OF CHICAGO, and Edward V. Hanrahan et al.,
Defendants-Appellees.
 No. 72-1277, 72-1300.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 6, 1973.
Decided Aug. 24, 1973.
 
 Michael Deutsch, Jeffrey H. Haas, Chicago, Ill., Arthur Kinoy, William J. Bender, Newark, N. J., David Scribner, New York City, Jonathan M. Hyman, Chicago, Ill., for plaintiffs-appellants.
 Bernard Carey, State's Atty., Michael J. Goldstein, Charles A. Powell, Asst. State's Attys., Richard L. Curry, Corp. Counsel, Gayle F. Haglund, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.
 Before FAIRCHILD, STEVENS and SPRECHER, Circuit Judges.
 STEVENS, Circuit Judge.
 
 
 1
 Plaintiffs allege that 14 Chicago police officers raided an apartment at 2337 West Monroe Street at 4:15 A.M. on December 4, 1969, for the purpose of killing Mark Clark and Fred Hampton and punishing seven other residents of the apartment because they were black and had exercised their First Amendment rights as members of the Black Panther Party. They also allege that 15 other defendants conspired to imprison and prosecute seven surviving occupants without any legal basis whatsoever. In four separate complaints, containing a total of 49 counts, plaintiffs claim actual and punitive damages under the Federal Civil Rights Act and Illinois law. Accepting the allegations as true, as the law requires, the district court denied motions to dismiss filed by the fourteen participating officers,[1] but entered a final judgment dismissing all claims against the remaining 15 defendants. Plaintiffs appeal from that judgment.[2]
 
 
 2
 The appellees include: (1) The State's Attorney (Hanrahan) and three Assistant State's Attorneys (Jalovec, Sorosky and Meltreger); (2) seven police officers who participated in certain investigations after the raid;[3] (3) the Mayor of Chicago (Daley) and the Superintendent of Police (Conlisk); and (4) the City of Chicago and the County of Cook, municipal corporations. The district court held that the prosecutors were protected by quasi-judicial immunity, that the allegations against the appellee police officers, Mayor Daley and Superintendent Conlisk were insufficient, and that the City and County were not "persons" within the meaning of the federal civil rights statutes and are immune from liability on a respondeat superior theory. In three of the cases jurisdiction stems from the federal questions which are raised; in the fourth, plaintiff Brewer is a citizen of Michigan and therefore diversity jurisdiction is also asserted.
 
 
 3
 For the purposes of this appeal we must assume that all of plaintiffs' allegations are true. The test of sufficiency is whether ". . . it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80.[4] Since different issues are raised with respect to different appellees, we consider the relevant allegations separately.
 
 
 4
 In view of the large number of claims asserted, and the fact that the district court order requires all pleadings to be amended, we limit our review, with respect to each appellee, to the question whether any sufficient claim for relief has been alleged. Since reversal as to any appellee on any theory renders the district court's other rulings respecting that appellee subject to revision at any time prior to the conclusion of the entire trial, see Rule 54(b) Fed.R.Civ.P., it would be inappropriate to discuss the sufficiency of claims which may be amended and which need not be passed upon in order to determine this appeal.
 
 
 5
 1. Hanrahan and Jalovec. The Hampton complaint alleges that "under color of state search warrant" 14 police officers illegally entered the residence of Fred Hampton and, without provocation, fired over 90 bullets from machine guns, pistols, shotguns and carbines into the general living quarters, critically wounding Fred Hampton, who was otherwise physically abused and ultimately died. In addition, the officers allegedly stole or damaged Hampton's personal property and destroyed evidence of their illegal conduct. These alleged acts were "perpetrated upon Fred Hampton, Chairman of the Illinois Black Panther Party, because of his beliefs, thoughts, words and associations" (p 21) in order "to create fear and terror in the Black Community" (p 23).
 
 
 6
 Hampton's administratrix alleges that Hanrahan and Jalovec, with the 14 officers, planned the raid and agreed to use excessive and deadly force against Hampton and others in his residence. Their alleged purpose was to deprive him of his constitutional rights because of his race and his political beliefs.
 
 
 7
 The Clark complaint tersely alleges that the officers shot and killed Mark Clark without any authority of law and thereby denied him due process of law by imposing summary punishment of death upon him. It alleges that defendant Hanrahan, or his Assistant State's Attorney, did "with specific intent, plan and execute the acts as alleged herein" (p 16); further, that these acts were the result of a tacit understanding "to treat the deceased as they did because he was Black."
 
 
 8
 The Johnson and Brewer complaints describe the raid in greater detail. They allege that four of the plaintiffs[5] were wounded by gun fire and that all of them were physically and verbally abused and illegally arrested. Again the complaints allege that Hanrahan and Jalovec, as well as the 14 officers, "wilfully, maliciously, and with specific intent planned and executed the acts" recited in the complaints. These complaints also include a number of counts alleging state law claims of false imprisonment and malicious prosecution; these charges also involve defendants Hanrahan and Jalovec but will be discussed in Part 2 of this opinion.
 
 
 9
 As the district court correctly held, the allegations are plainly sufficient to state claims against the participating officers under the Federal Civil Rights Act, 42 U.S.C. Secs. 1983 and 1985(3). It is equally clear that the allegations respecting the planning and execution of the raid by Hanrahan and Jalovec are sufficient unless their prosecutorial offices gave them immunity.
 
 
 10
 The district court erroneously relied on the Illinois Tort Immunity Act.[6] Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. Sec. 1983 or Sec. 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced. See McLaughlin v. Tilendis, 398 F.2d 287, 290 (7th Cir. 1968). The immunity claim raises a question of federal law.
 
 
 11
 The claim of immunity must not be confused with the defense of good faith. That defense is available to a person who, either because of his position or because of his conduct, is not immune from suit. See Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L. Ed.2d 288. In those situations in which immunity is properly claimed, the action is defeated at the outset. An essential purpose of the doctrine is to give the officer freedom to exercise his discretion and to perform his official duties without fear that his conduct will be called into question at an evidentiary hearing or subject him to personal liability.
 
 
 12
 The source of the immunity is found in common law doctrine recognized in federal judicial decisions. The Supreme Court has squarely held that the broad language of the Civil Rights Act of 1871 did not abolish this protection for legislators "acting in a field where legislators traditionally have power to act," Tenney v. Brandhove, 341 U. S. 367, 379, 71 S.Ct. 783, 789, 95 L.Ed. 1019, or for judges for acts "within their judicial jurisdiction . . . even when the judge is accused of acting maliciously and corruptly. . . ." Pierson v. Ray, 386 U.S. 547, 554, 87 S. Ct. 1213, 1217, 1218, 18 L.Ed.2d 288.[7] With respect to legislators and judges, it is clear that the doctrine may not be circumvented by allegations of improper motive; rather, the availability of immunity depends on the character of the conduct under attack.
 
 
 13
 The scope of immunity enjoyed by a state prosecutor has not yet been defined by the Supreme Court. We are nevertheless confident that at least some of his traditional functions must be immune from suit under Sec. 1983. See Littleton v. Berbling, 468 F.2d 389, and cases cited at page 409 (7th Cir. 1972). In view of the overriding importance of federal law, the area of his protection cannot be either limited or expanded by a state's statutory definition of his authority or responsibility; we therefore do not pause to review the respective parties' analyses of the relevant Illinois statute.[8] Nor do we attach any weight in analyzing the immunity question to the numerous ways in which the pleadings characterize the motivation of the prosecutor as wrongful-ranging from "sadistic" or "racial" to the more familiar "malicious" or "discriminatory." The immunity doctrine would be of little value if such characterization of his motive could force the prosecutor to stand trial.
 
 
 14
 Prosecutorial conduct which traditionally has been treated as immune is often described as "quasi-judicial" as opposed to investigatory activities normally performed by laymen, such as police officers. Judge Ely's exposition of the distinction in Robichaud v. Ronan, 351 F.2d 533 (9th Cir. 1965) properly focuses on the character of the defendant's conduct, rather than his alleged motivation:
 
 
 15
 "We believe, however, that when a prosecuting attorney acts in some capacity other than his quasi-judicial capacity, then the reason for his immunity-integral relationship between his acts and the judicial process- ceases to exist. If he acts in the role of a policeman, then why should he not be liable, as is the policeman, if, in so acting, he has deprived the plaintiff of rights, privileges, or immunities secured by the Federal Constitution and laws? See Monroe v. Pape, supra, 365 U.S. 167, at 187, 81 S.Ct. 473, 5 L.Ed.2d 492; see also Schneider v. Shepherd, 192 Mich. 82, 158 N.W. 182, L.R.A.1916F, 399 (1916), cited in Yaselli [Yaselli v. Goff] 12 F.2d 396 at 405, 2 Cir. To us, it seems neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." Id. at 536-537.
 
 
 16
 The conduct of Hanrahan and Jalovec in planning the raid may be described in various ways. At one extreme the complaints may be read to charge that they deliberately planned to have the police officers kill Hampton and Clark. Even without the allegation of improper political or racial motivation, it is plain that no immunity would apply under that reading. Regardless of his motives, the prosecutor certainly may not order subordinates to kill or to punish a free citizen without trial. Notwithstanding the tone of these complaints, however, appellants have not urged this extreme reading on the court; we therefore do not so interpret the allegations.
 
 
 17
 At the other extreme, defendants Hanrahan and Jalovec argue that they are charged with nothing more than the drafting of a search warrant which the raiding officers executed, an act which should be accepted as a traditional duty of the Attorney for the County. But we are persuaded that the "planning" allegations cannot fairly be read so narrowly. At the very least they charge that Hanrahan and Jalovec planned a raid in order to obtain evidence of criminal activity. Defendants argue that evidence gathering is so closely related to the presentation of evidence at trial that it should also be clothed with immunity. We find this argument unpersuasive. Even though defensible if conducted in good faith with probable cause, the State's Attorney's alleged participation in the planning and execution of a raid of this character has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.
 
 
 18
 The district court erred in holding that the immunity doctrine requires dismissal, without trial, of plaintiffs' charges against defendants Hanrahan and Jalovec.
 
 
 19
 2. Mulchrone, Ervanian, Meade, Kukowinski, Purtell, Koludrovic, Sadunas, Sorosky and Meltreger. The Johnson and Brewer complaints also allege that nine appellees, including seven police officers and two additional Assistant State's Attorneys, joined with Hanrahan and Jalovec and the 14 participating officers in an extensive conspiracy to cause the false arrest and imprisonment of the surviving plaintiffs, the institution of an unfounded prosecution, and the concealment of the truth from the public.
 
 
 20
 Several of the plaintiffs were arrested on December 4, 1969, charged with attempted murder and aggravated battery, and imprisoned until December 21, 1969; their prosecutions were continued until May 8, 1970. They allege that there was no legal basis for the arrests, the charges, or the imprisonment. Quite plainly, if the allegations are true, Sec. 1983 authorizes relief against each person who, acting under color of state law, is responsible for these wrongs. Moreover, the conspiracy which they allege is also actionable under Sec. 1985(3). We are satisfied that the post-raid charges against Hanrahan, Jalovec and the 14 police officers are sufficient under both Sec. 1983 and Sec. 1985(3). The sufficiency of the charges against the other defendants is less clear.
 
 
 21
 The complaints charge that these defendants took certain action designed to conceal the fact that there was no basis for arresting, holding or prosecuting the plaintiffs, and that the continuing concealment aggravated plaintiffs' injuries. Thus, Mulchrone and Ervanian, Supervising Officers of the Internal Inspections Division of the Chicago Police Department, allegedly limited the scope of their investigations in order to prevent information contradiciting the participating officers' version of the raid from coming to light. Defendant Meade prepared a set of questions and answers for the officers that would avoid a fair test of their veracity. Defendants Sorosky and Meltreger helped to edit these questions and answers.[9] Defendants Sadunas and Koludrovic gave false testimony at the coroner's inquest. Sadunas allegedly gave testimony before the grand jury which he knew to be false. Defendants Purtell and Sadunas allegedly filed an incomplete and erroneous firearms report-again to corroborate the official, but false, version of the raid.
 
 
 22
 The complaints allege that as a direct result of the conspiracy, the unfounded prosecution was continued until May 8, 1970, and plaintiffs incurred expenses in preparing their defense. The conspiracy charge is somewhat tenuous since it merely alleges that "some or all" of the defendants participated, and the causal connection between the conduct of several appellees and the alleged injury to plaintiffs is doubtful at best. Nevertheless, serious allegations of conspiracy have been made, and matters such as the extent of injury and causal connection raise questions for the trier of fact. Since we cannot say with certainty that there is no possibility that any set of facts which might be proved in support of the allegations would entitle one or more of the plaintiffs to some relief, it was error for the district court to enter judgment finally disposing of the claims against these defendants.
 
 
 23
 If the alleged conspiracy did exist, as we must assume at this stage of the case, and if it did prolong a completely unfounded prosecution, plaintiffs are entitled to relief against each conspirator. The vague allegation that "some or all" of the defendants were participants does not justify requiring them all to stand trial. But if some are in fact liable, it would be unjust to permit a final judgment to exonerate all before trial, or even discovery, has commenced. We therefore conclude that even if the charges against certain of the defendants may have been properly dismissed because the allegations were deficient, it was error to enter final judgment in favor of Mulchrone, Ervanian, Meade, Kukowinski, Purtell, Koludrovic, Sadunas, Sorosky and Meltreger at this stage of the case.
 
 
 24
 3. Daley and Conlisk. In the Johnson and Brewer complaints, plaintiffs claim that Mayor Daley and Superintendent Conlisk are liable pursuant to 42 U.S.C. Sec. 1986 for the consequences of the alleged conspiracy.[10] The charge, in essence, is that they had the power and authority to prevent a violation of Sec. 1985(3) by the other defendants and failed to do so. Liability under Sec. 1986, however, is dependent on proof of actual knowledge by a defendant of the wrongful conduct of his subordinates. In their brief, plaintiffs summarize the critical charges against Daley and Conlisk by stating that the complaints allege "that due to their positions of authority and responsibility, [they] knew of the conspiracy against the plaintiffs." Brief for Appellants at 43. We agree with the district court that those allegations are insufficient.
 
 
 25
 4. City of Chicago and County of Cook. The several claims against the City and the County under the Civil Rights Act were properly dismissed because these defendants are not "persons" within the meaning of the statute. See Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L. Ed.2d 596 (1973). That decision makes it clear, however, that the district court had jurisdiction over Brewer's state law claims against the County and presumably the City as well, on the basis of diversity of citizenship. 411 U.S. at 714-722, 93 S.Ct. 1785.
 
 
 26
 Those claims, asserted in Counts 13, 14 and 15 of the Brewer complaint, allege common law torts of assault and battery, false imprisonment, and malicious prosecution. The district court held that these claims against the County are barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, Ill.Rev.Stat. Ch. 85, Sec. 1-101 et seq. The district court relied primarily on Mills v. County of Winnebago, 104 Ill.App.2d 366, 244 N.E.2d 65 (2d Dist.1969).[11] Subsequent to the decision of the district court, that case was overruled sub silentio by Arnolt v. Highland Park, 52 Ill.2d 27, 282 N.E.2d 144 (1972). See Krieger v. Carpentersville, 8 Ill.App.3d 243, 289 N.E.2d 481, 484 (2d Dist.1972). As we read those cases, it now seems quite clear that the Illinois statute does not immunize municipal corporations from liability if their agents are guilty of wilful and wanton misconduct. The allegations in the Brewer complaint against the City of Chicago and Cook County are therefore sufficient.
 
 
 27
 The district court dismissed parallel state law claims in the Johnson complaint on the same grounds. However, there was no diversity of citizenship in that case, and this court ruled in Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1964), that the doctrine of pendent jurisdiction does not permit joinder of claims against a new party. Therefore, the dismissal of the state law claims in the Johnson complaint should be for want of jurisdiction, and the lower court's order is appropriately modified.
 
 
 28
 Insofar as the district court's order of February 3, 1972, dismissed the charges against the City of Chicago and the County of Cook, it is reversed with respect to the Brewer complaint and affirmed as modified with respect to the Johnson complaint; insofar as it dismissed the charges against Mayor Daley and Superintendent Conlisk, it is affirmed; insofar as it dismissed the charges against defendants Hanrahan, Jalovec, Mulchrone, Ervanian, Meade, Kukowinski, Purtell, Koludrovic, Sadunas, Sorosky and Meltreger, it is reversed. The case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 29
 Reversed and remanded.
 
 
 
 [1]
 With respect to the motions to strike and dismiss of defendants James Davis, Daniel Groth, Edward Carmody, John Ciszewski, Ray Broderick, George Jones, John Marusich, Lynwood Harris, Fred Howard, William Corbett, William Kelly, Philip Joseph, Joseph Gorman and Robert Hughes, the district court stated: "These police officers of the City of Chicago were detailed and/or on detached service with the Office of the Cook County State's Attorney as State's Attorney's police or detail. This group of policemen is charged in all four of the consolidated complaints with actual on-thescene participation in the raid on the Monroe Street apartment occupied by Fred A. Hampton, Mark Clark, Verlina Brewer, Deborah Johnson, Ronald Satchel, Harold Bell, Blair Anderson, Brenda Harris and Louis Truelock. Plaintiffs charge illegal and forced entry of the apartment and the unjustifiable use of excessive and deadly force by these officers acting under color of law. In the various complaints these policemen are charged with killing Fred Hampton in the presence of his fiance, Deborah Johnson, with killing Mark Clark, with wounding plaintiffs Satchel, Anderson and Harris, and with physically and verbally abusing and illegally arresting plaintiffs Brewer, Johnson, Satchel, Bell, Anderson, Harris and Truelock. They are also charged with conspiracy and conspiracy in connection with alleged and malicious prosecutions [sic]. These allegations and others are set forth in detail in the various complaints. As to certain of the allegations made in the complaints against these defendants, the court is of the opinion that there are questions of fact and of law that cannot be resolved except upon trial." 339 F.Supp. 695, 700-701 (N.D.Ill.1972)
 
 
 [2]
 The district court consolidated the four cases. His order of dismissal directed the plaintiffs to file amended complaints against the 14 participating officers and expressly determined that there was no just reason for delay in entering final judgment in favor of the 15 appellees; the order is therefore appealable. The appeals have been consolidated in this court
 
 
 [3]
 John Mulchrone, Harry Ervanian, John Meade, Robert Kukowinski, David Purtell, Charles Koludrovic and John Sadunas
 
 
 [4]
 Despite the City's suggestion to the contrary, we must ignore what it describes as "several contradictory facts made a matter of public record" in the state criminal prosecution of defendant Hanrahan; cited at page four of the City's brief as People v. Hanrahan, Circ. Ct. of Cook County No. 71 Cr. 1791. A finding in favor of defendants in that case is clearly no bar to this action since none of these plaintiffs is a party to that judgment
 
 
 [5]
 Satchel, Anderson, Harris and Brewer
 
 
 [6]
 Ill.Rev.Stat.1969, Ch. 85, Sec. 1-101 et seq
 
 
 [7]
 "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' (Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868), quoted in Bradley v. Fisher, supra, 349, note, at 350.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." Id. at 553-554, 87 S.Ct. at 1217-1218
 
 
 [8]
 See Ill.Rev.Stat. Ch. 14, Sec. 5
 
 
 [9]
 The purpose of their review was allegedly to make certain that the officers would not give testimony inconsistent with previous official statements about the incident. The alleged conduct of Assistant State's Attorneys Sorosky and Meltreger clearly exceeded the scope of their quasi-judicial immunity. For, in substance, plaintiffs allege the deliberate preparation of perjured testimony
 
 
 [10]
 Section 1986 provides:
 "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."
 
 
 [11]
 It also cited Fustin v. Board of Education of Community Unit District No. 2, 101 Ill. App.2d 113, 242 N.E.2d 308 (5th Dist.1968), and Woodman v. Litchfield Community School District, No. 12, 102 Ill.App.2d 330, 242 N.E.2d 780 (5th Dist.1968)