**Vertia BOYD, Plaintiff-Appellant,**

v.

**Raymond ADAMS et al.,
Defendants-Appellees.**

**No. 74–1337.**

United States Court of Appeals,
Seventh Circuit.

Heard Jan. 8, 1975.

Decided March 27, 1975.

---

David C. Thomas, Chicago, Ill., for plaintiff-appellant.

Richard L. Curry, Corp. Counsel, Jerome A. Siegan, Asst. Corp. Counsel, Bernard Carey, State's Atty., John A. Dienner, III, Asst. State's Atty., Chicago, Ill., for defendants-appellees.

Before SWYGERT, CUMMINGS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

This complaint was filed under the Civil Rights Act (42 U.S.C. §§ 1983, 1985, 1986 and 1988) seeking damages for illegal arrest and search, unlawful imprisonment and physical brutality. The defendants were the arresting police offi-

cers, Raymond Adams and Richard Hofman, then Chicago Superintendent of Police Conlisk, the City of Chicago, then State's Attorney of Cook County Hanrahan, and Assistant State's Attorney Paul S. Kayman.

The complaint alleges that at 2:30 p. m. on February 9, 1972, plaintiff was a passenger in an automobile driven by Tommy Jones. The other passengers were Donald Jones and William Taylor. They were driving to Austin High School in Chicago to pick up the mother of the Jones brothers. After circling the school, the automobile was stopped by the defendant police officers who were in plain clothes and driving an unmarked police car. The policemen searched the three male occupants of the automobile and the automobile itself and found nothing incriminating. Plaintiff refused to be searched. She alleges that the defendant police thereupon "pushed her violently against the Jones vehicle, then grabbed her and pushed her over to their police car. They shoved her violently against the police car as well, all the while using abusive language toward her and threatening her." Plaintiff claims that at all times relevant to the complaint she was pregnant. She was then arrested and transported to the Austin Police Station and eventually to the Central Police Station where she was incarcerated for five hours while charges of disorderly conduct and resisting a police officer in the performance of his duty were preferred against her. Plaintiff alleges that the assault upon her caused a miscarriage in September 1972.

Plaintiff appeared in court on June 7, 1972, for trial of the charges brought against her by police officer Adams. Defendant Assistant State's Attorney

Kayman purportedly agreed to dismiss the charges on the condition that she execute a release of the police officers and the City of Chicago for liability. The release was attached to the complaint, but plaintiff claims that it was executed under duress, coercion and fear of further punitive and harassing action.[1]

In addition to the damages sought, plaintiff sought a declaratory judgment that the release she executed was void and unenforcible and also sought an injunction against the practice of exchanging a dismissal of criminal charges for a release from civil liability. Finally, the district court was asked to enjoin the State's Attorney and his assistant from prosecuting plaintiff and from taking any other retaliatory action.

In a memorandum opinion, the district court granted the City's motion to dismiss and Superintendent Conlisk's motion for summary judgment, and those rulings are not involved in this appeal. In that opinion, the district court also granted the State's Attorney's and Assistant State's Attorney's motion to dismiss on immunity grounds before our decision in Hampton v. City of Chicago, 484 F.2d 602 (7th Cir. 1973), certiorari denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471, was released. 364 F.Supp. 1180 (N.D.Ill.1973). In a subsequent, unreported memorandum opinion, the district court held the release valid and dismissed the claim against the two policemen.

*Prosecutorial Immunity*

The district court relied upon our opinion in Littleton v. Berbling, 468 F.2d 389, 409–410 (7th Cir. 1972), reversed on other grounds sub nom. O'Shea v. Little-

---

1. The release constituted a form, allegedly supplied by the Assistant State's Attorney, with the appropriate blanks filled in and the signature and address of Vertia Boyd. The form provides:

"For and in consideration of the sum of $1.00 and other valuables and consideration, the receipt whereof is hereby acknowledged, the undersigned does hereby release and forever discharge the City of Chicago, its agents and employees including R. Adams # 13001 and R. Hofmann # 8850 from any and all claims and causes of action, he, his heirs and assigns now has or hereafter may have against the City of Chicago, its agents, employees and R. Adams # 13001 and R. Hofmann # 8850 from or arising out of an arrest which occurred on the 2/9/72 in the City of Chicago.

/s/ Vertia Boyd"

ton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674, and the Illinois Local Governmental and Governmental Employee Tort Immunity Act, Ill.Rev.Stat., Ch. 85, § 1–101 et seq. (1969), in concluding that defendants Hanrahan and Kayman were immune from suit under Section 1983 of the Civil Rights Act. The court thereupon dismissed the action as against the two prosecutors. We agree that the then State's Attorney and his assistant are immune from monetary liability for damages under Section 1983 because dismissing the charges in exchange for the release was within the "quasi-judicial" function of the prosecutor and not among the "investigatory activities normally performed by laymen, such as police officers." Hampton v. City of Chicago, *supra,* 484 F.2d at 608; Tyler v. Witkowski, 511 F.2d 449, 450–451 (7th Cir. 1975).[2]

While this Court agrees that defendant prosecutors are immune from liability for the compensatory and punitive damages sought, a different question is presented by plaintiff's prayer for injunctive relief forbidding the future exchanging of dismissals for releases from liability and preventing further prosecution of plaintiff or other retaliatory conduct by the prosecutors. The district court never discussed this aspect of the case.[3]

■ Prosecutorial immunity is a derivative of judicial immunity. Littleton v. Berbling, *supra,* 468 F.2d at 408–410; Robichaud v. Ronan, 351 F.2d 533, 536 (9th Cir. 1965). In Jacobson v. Schaefer, 441 F.2d 127 (7th Cir. 1971), a case dealing with judicial immunity, this Court said:

"We point out again that we are applying the judicial immunity doctrine *only to damage suits* against judges. *The doctrine does not reach suits for purely equitable relief.*" (441 F.2d at 130, emphasis added.)

In Conover v. Montemuro, 477 F.2d 1073, 1096–1104 (3d Cir. 1973) (en banc) (Judge Gibbons, concurring), the application of immunity to a complaint seeking injunctive relief against a state judge under Section 1983 is discussed at great length. There, after an exhaustive historical analysis, Judge Gibbons found that judicial immunity did not prohibit injunctive relief. No case has been cited in the briefs, nor has our own research revealed any, which holds that a state prosecutor's immunity, or any other state official's immunity, to damage claims under the Civil Rights Act extends to injunctive remedies. See generally Safeguard Mutual Insurance Co. v. Miller, 472 F.2d 732, 734–735 (3d Cir. 1973); Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; cf. Rochester v. White, 503 F.2d 263, 267 (3d Cir. 1974).

The policies so often cited in the cases as the justification for certain state officials' immunity from damages under the Civil Rights Act include: (1) an official who must make decisions based upon his discretion should not have to fear personal financial loss, if he errs, and (2) the spectre of such financial loss will deter qualified persons from public service. See, *e. g.,* Wood v. Strickland, —— U.S. ——, 95 S.Ct. 992, 43 L.Ed.2d 214, especially the majority opinion 95 S.Ct. at 999 and the dissent of Justice Powell, 95 S.Ct. at 1005. Prospective, prohibitory injunctions, such as those sought here

---

**2.** See also Duba v. McIntyre, 501 F.2d 590, 592 (8th Cir. 1974). Neither MacDonald v. Musick, 425 F.2d 373 (9th Cir. 1970), certiorari denied, 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90, nor Dixon v. District of Columbia, 129 U.S. App.D.C. 341, 394 F.2d 966 (1968), upon which plaintiff relies, involved prosecutorial immunity.

The district court's reliance on the Illinois Immunity Statute was misplaced. Hampton v. City of Chicago, *supra,* 484 F.2d at 607; Clark v. Ziedonis, 53 F.2d 79, 81 (7th Cir. 1975).

**3.** The Illinois Local Governmental and Governmental Employee Tort Immunity Act, upon which the district court erroneously relied, provides in pertinent part:

"Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee."

Ill.Rev.Sta., Ch. 85, § 2–101 (1973). Thus even under the Illinois Act plaintiff's claim to injunctive relief would not be foreclosed.

by plaintiff, will, if granted, only order defendant prosecutors to conform their conduct to the dictates of the law. No personal financial risk is involved, nor should any person be deterred from public service because of the possibility that a court may order him to conform his future conduct to the law.[4]

■ In light of the lack of any directly contrary precedent and the inapplicability of the policy considerations which underlie the granting of immunity from damages, we hold that defendant prosecutors are not immune from that part of plaintiff's claim that seeks injunctive relief. Of course, this does not mean that plaintiff is entitled to an injunction. Because defendant prosecutors were dismissed before a hearing on the merits, we have necessarily assumed the facts alleged as to them in the complaint can be proven at trial. Moreover, the district court never reached the question of the propriety of injunctive relief under the conventional analysis. Upon remand, the court should examine plaintiff's claim in light of this opinion.

*Validity of the Release*

Plaintiff urges that the district court erred when, after a hearing which examined the factual circumstances surrounding the execution of the release, it held the release of civil liability valid and therefore dismissed on the merits the claims against the defendant policen The question presented by plainti contention is a purely federal one, whether a release executed under the circumstances presented here constitutes a valid waiver of plaintiff's constitutional rights. We need not consider whether the release would be valid in a suit based on Illinois tort law, because plaintiff has brought suit under a federal statute in federal court alleging deprivation of rights secured by the federal constitution.[5]

■ While the Supreme Court has recognized that one may voluntarily relinquish constitutional rights, it has also required that such relinquishments be entered into voluntarily under all of the circumstances presented. Schneckloth v. Bustamonte, 412 U.S. 218, 222–234, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854. The district court held the instant release valid because it found that plaintiff had knowingly waived her right to pursue civil claims against defendants and because no coercion or duress of any sort had been exerted upon her. We cannot agree. After her arrest, plaintiff was held in custody for five hours until her mother posted a bond. At the time plaintiff executed the release, she still was on conditional recognizance bail. Her uncontested testimony was that she would not be able to pay the disorderly conduct and resisting arrest fines and

---

**4.** We also note that the defendant prosecutors in this case were represented in this Court and in the court below by attorneys from the office of the State's Attorney of Cook County, Illinois, so that they were not made to bear personally the costs of their defense. Under Fed. R.Civ.P. 25(d)(1), Bernard Carey, successor to State's Attorney Hanrahan, automatically became a defendant when succeeding to that office. Since no claim for damages will lie against Mr. Hanrahan, upon remand, Mr. Carey should be substituted for him as a party defendant by the district court.

**5.** We note that the release would be of doubtful validity even under Illinois law. As Justice Burman pointed out in Williamsen v. Jernberg, 99 Ill.App.2d 371, 375, 240 N.E.2d 758, 760 (1st Dist. 1968):

"The universal rule, followed in Illinois, is that '[c]ompounding a crime being itself criminal, an agreement not to prosecute is void, not only because it is against the policy of the law, but also because the agreement is itself a crime . . . .' 17 C.J.S. Contracts § 228, p. 1067. Therefore, where the consideration for the execution of a note is a promise by the payee not to prosecute a party for an alleged crime, the consideration for the note is illegal and the instrument is void. Dionne v. Matzenbaugh, 49 Ill.App. 527. Where any part of the consideration for a contractual obligation executed to compromise civil injuries resulting from a criminal act is a promise that the prosecution for the criminal act shall be suppressed, the contract is unenforceable. Henderson v. Victor, 268 Ill.App. 514; Good Hope State Bank v. Kline, 303 Ill.App. 381, 25 N.E.2d 425."

therefore thought she would again be put in jail. Thus as in Bucher v. Krause, 200 F.2d 576, 585 (7th Cir. 1952), certiorari denied, 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404, where Bucher was likewise charged with resisting arrest in violation of the Municipal Code of the City of Chicago, at the time she signed the release, under the age-old concept of duress by imprisonment, plaintiff was "effectively restrained." As a matter of law, the district judge should have held, on the facts as he found them, that the release was secured in such an inherently coercive context that plaintiff did not effectively waive her civil rights action against defendants. In the circumstances, the "waiver" of these federally guaranteed rights was neither voluntary nor an intentional relinquishment or abandonment of the right or privilege, as required. Schneckloth v. Bustamonte, *supra*, 412 U.S. at 248–249, 93 S.Ct. 2041; D. H. Overmyer Co. v. Frick Co., 405 U.S. 174, 186, 92 S.Ct. 775, 31 L.Ed.2d 124; Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461.

In deciding that there had been no coercion, the district court relied upon its finding, which is supported in the evidence and admitted by plaintiff here, that the possibility of exchanging a release for dismissal of the charges was first suggested by plaintiff's counsel. While the release practice was in effect and there was therefore a possibility of securing a dismissal of charges against his client without the risk of conviction, plaintiff's counsel had a duty to inform her of the release practice and to approach the prosecutors about it unless she disapproved. Counsel also advised his client of his opinion regarding the possible legal invalidity of the release, which was also his duty, so that his client could make an informed decision as to the best course of action. If the inherently coercive nature of the situation could be wholly negated in the eyes of a court because negotiations leading to the release were commenced by plaintiff's counsel, the coercive practice would be perpetuated so long as the prosecu-

tors refrained from instigating the negotiations. In a short time, routine practice would call for the accused's counsel to initiate release discussions. In our judgment, it is immaterial that plaintiff's counsel commenced the discussions. See Woodall v. Peden, 274 Ill. 301, 305–306, 113 N.E. 608 (1916); Williamsen v. Jernberg, 99 Ill.App.2d 371, 240 N.E.2d 758 (1st Dist. 1968); Good Hope State Bank v. Kline, 303 Ill.App. 381, 25 N.E.2d 425 (3rd Dist. 1940). The inherently coercive character of such a situation is not dependent upon which party first suggests the release since the very existence of the well-known release practice invited plaintiff's counsel to enter the negotiations.

■ In addition to the defect in the release caused by the inherent coercion present, we think that the release is void as against public policy. In his memorandum of decision, the district judge stated that "these release agreements are basically odious and must have every presumption placed against their validity." The decision goes on to summarize:

"In sum, we find these release agreements odious and distasteful, to be enforced only in very rare circumstances. Among other requirements, there must be a knowing and intelligent waiver by the signer of the right to pursue further actions at law, and the person[s] released from liability have the burden of proving by clear and convincing proof, that no coercion or duress of any sort was exerted upon the signer."

As well stated in Dixon v. District of Columbia, 129 U.S.App.D.C. 341, 394 F.2d 966, 968–969 (1968), a case where the arrestee violated his "tacit" agreement not to sue and the prosecutor retaliated by filing the traffic charges, which had been held in abeyance pursuant to the tacit agreement:

"The Government may not prosecute for the purpose of deterring people from exercising their right to protest official misconduct and petition for redress of grievances.

\*    \*    \*    \*    \*    \*

"The major evil of these agreements is not that charges are sometimes dropped against people who probably should be prosecuted. Much more important, these agreements suppress complaints against police misconduct which should be thoroughly aired in a free society. And they tempt the prosecutor to trump up charges for use in bargaining for suppression of the complaint. The danger of concocted charges is particularly great because complaints against the police usually arise in connection with arrests for extremely vague offenses such as disorderly conduct or resisting arrest."

Likewise, in MacDonald v. Musick, 425 F.2d 373, 375 (9th Cir. 1970), where an arrestee refused to enter into a stipulation that would bar a civil action against the officers who arrested him, Judge Duniway stated the proposition as follows:

"It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a civil proceeding by the defendant against policemen, even where the civil case arises from the events that are also the basis for the criminal charge. * * * What [the prosecutor] cannot do is condition a voluntary dismissal of a charge upon a stipulation by the defendant that is designed to forestall the latter's civil case."

An application of the principles of these cases leads us to the conclusion that this release is invalid as a matter of public policy.[6] For the reasons set out in the discussion of coercion *supra*, the district court erred in holding that instigation of negotiations by plaintiff's counsel and other facts found present in this case constitute the "very rare circumstances"

which would justify the enforcement of these "odious" releases.

Defendants argue that the present case is moot as to part of the prospective injunctive relief sought because such releases were apparently forbidden after February 26, 1973, in accordance with the memorandum set out in note 6, *supra*. However, there can be no assurance that a new State's Attorney or his assistants will not resurrect the old procedure in the future. The propriety of injunctive relief cannot be foreclosed by a promise to discontinue what has been an established pattern of wrongdoing. United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303. As reiterated in United States v. Concentrated Phosphate Export Association, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344, "mere voluntary cessation of allegedly illegal conduct does not moot a case * * *." See also Aurora Education Ass'n v. Board of Education of Aurora Public School District No. 131, 490 F.2d 431, 435 (7th Cir. 1973); Knell v. Bensinger, 489 F.2d 1014, 1018 (7th Cir. 1973); Lankford v. Gelston, 364 F.2d 197, 203 (4th Cir. 1966).

In summary, insofar as the district court's opinion holds the State's Attorney and his assistant immune from monetary damages, it is affirmed. However, because injunctive relief may be proper against these two defendants, their dismissal is reversed. Finally, the district court's determination that the release was valid is reversed. Plaintiff has propounded other arguments to sustain its position, but we find them to be without merit.

Affirmed in part; reversed in part and remanded.

---

**6.** Apparently the State's Attorney's office recognized the dubious validity of the releases secured in exchange for dismissals of charges, for in a memorandum from the Chief of the Criminal Division to Assistant State's Attorneys, which was circulated four days after the service of summons upon the State's Attorney in this lawsuit, it was said:

"An Assistant State's Attorney is not permitted to condition his official action in a criminal case as contingent upon the action

of any person in a civil proceeding (e. g. a nolle in return for a release of a civil liability). Your official action must be based only upon the merits of the criminal case before you. To do otherwise could violate Chapter 38, Section 32–1, Illinois Revised Statutes (Compounding a Crime) and would be of doubtful validity."

The reference to the possible criminal nature of the release practice is verified by the discussion in Williamsen v. Jernberg, *supra*, note 5.