**Bernard E. RUMERY, Jr.,**
**Plaintiff, Appellant,**

v.

**TOWN OF NEWTON, etc., et al.,**
**Defendants, Appellees.**

**No. 85–1508.**

United States Court of Appeals,
First Circuit.

Heard Oct. 8, 1985.

Decided Dec. 2, 1985.

---

Charles P. Bauer with whom G. Wells Anderson and Hall, Morse, Gallagher & Anderson, Concord, N.H., were on brief, for plaintiff, appellant.

James S. Yakovakis with whom Brian T. McDonough, James S. Yakovakis Professional Ass'n, Donald E. Gardner and Devine, Millimet, Stahl & Branch Professional Ass'n, Manchester, N.H., were on brief, for defendants, appellees.

Before COFFIN, BREYER and TIMBERS, * Circuit Judges.

TIMBERS, Circuit Judge:

Bernard E. Rumery, Jr. ("appellant") appeals from a judgment entered April 30, 1985 in the District of New Hampshire, Martin F. Loughlin, *District Judge*, granting defendants' motion to dismiss appellant's § 1983 claim and various pendent state law claims. The district court dismissed the complaint based on appellant's prior execution of a covenant not to sue, negotiated in exchange for the state prosecutor's decision to *nolle prosequi* a criminal case against appellant on a witness

* Of the Second Circuit, by designation.

tampering charge. On appeal, Rumery contends that the district court erred in holding that the release barred his complaint and asserts that the covenant should be held void as against public policy. We hold that a covenant not to sue public officials for alleged deprivations of constitutional rights, executed in exchange for a decision not to prosecute criminal charges, is void *ab initio* as against public policy. We reverse.

I.

We shall summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Rumery, a resident of Danville, New Hampshire, is a middle-aged marketing representative for an insurance company. After reading in a local newspaper that a former hunting companion of Rumery, one David Champy, had been charged with aggravated felonious sexual assault, Rumery telephoned Mary Deary to inquire whether she knew anything about the incident. Rumery and Mary Deary were business and social acquaintances. Rumery learned that Mary Deary was the alleged victim and the state's principal witness in the criminal case against Champy.

On May 11, 1983 Rumery and Mary Deary had a second telephone conversation. Appellees (the Town of Newton, its Chief of Police, David T. Barrett, and its Selectmen) contend that Rumery informed Mary Deary that Champy's wife had left him and that, if Mary did not want to hurt Champy, she could call the county attorney and ask him to drop the charges. Rumery asserts that the conversation was innocuous and that he made no threats to Mary Deary. Chief Barrett indicated to Deputy County Attorney Brian Graf that Rumery had made statements to Mary Deary to the effect that she might end up like two women in Lowell, Massachusetts, who had been murdered. On May 12, Chief Barrett arrested Rumery for tampering with a witness, in violation of New Hampshire Rev.

Stat.Ann. § 641:5,I,(b), a Class B felony. Rumery was arrested at his home in the presence of his wife, was handcuffed, and was taken to the Rockingham County jail.

Following his release on his personal recognizance, Rumery retained Stephen Woods as counsel. Woods, an experienced criminal attorney, and Graf discussed the possibility that the prosecution of Rumery could be dropped if Rumery signed a covenant not to sue the persons connected with his arrest. Chief Barrett had advised Graf that Mary Deary did not wish to testify against Rumery. Graf expressed concern about the lack of corroborating evidence of the telephone conversations.

Woods drafted the covenant not to sue and discussed the matter with Rumery. Three days after consulting with Woods, and before a hearing on probable cause for the arrest, Rumery signed the covenant not to sue the public officials connected with his arrest. Thereafter, the witness tampering charge against Rumery was dropped.

In April 1984, Rumery filed in the district court a six-count complaint pursuant to 42 U.S.C. § 1983 (1982) alleging both federal and pendent state law claims arising from his arrest for witness tampering.[1] Defendants Town of Newton, Chief Barrett and the Selectmen pleaded the covenant not to sue as an affirmative defense. In response to defendants' motion to dismiss and/or petition for declaratory judgment, the district court dismissed the complaint, finding, *inter alia*, that Rumery is a knowledgeable, industrious individual with extensive experience in the business world, that he carefully considered whether to sign the covenant not to sue, and that he was represented by competent and experienced counsel. This appeal followed.

## II.

Whether a covenant not to sue public officials, executed in exchange for a decision to *nolle prosequi*, is void *ab initio* is an issue of first impression under § 1983 in this Circuit. Federal law determines the

validity of this release of federal constitutional rights. *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir.1981); *Boyd v. Adams*, 513 F.2d 83, 87 (7th Cir.1975). There is no need, therefore, for us to examine New Hampshire law on the issue.

We recognize that our sister federal courts of appeals have reached varying results in determining the validity of releases of the right to sue for alleged violations of constitutional rights negotiated in the criminal law context. Appellees urge us to embrace the approach adopted by the Ninth and Fourth Circuits in cases which involved an analysis of whether the releases were executed in a voluntary, informed and deliberate manner.

In *Jones, supra*, the Ninth Circuit focused on objective factors in determining the validity of a release negotiated in exchange for $500. Following his conviction but awaiting sentencing, Jones alleged that he was taken from his cell, stripped, gagged, chained to a wall, hosed with cold water, beaten with a nightstick, and placed in a segregation cell for nineteen days. In holding that there was a triable issue of fact as to the voluntariness of the release of public officials' liability precluding summary judgment, the court considered such factors as the coercive environment, the absence of an attorney, and the pending sentencing. In this post-conviction context, the Ninth Circuit directed courts to examine whether the release was "voluntary, deliberate and informed." *Jones, supra*, 648 F.2d at 1203.

Appellees also rely on the Fourth Circuit's decision in *Bushnell v. Rossetti*, 750 F.2d 298 (4th Cir.1984), where the court rejected the argument that *all* agreements releasing civil rights in exchange for criminal sentencing consideration should be void as against public policy. The court instead applied the "voluntary, deliberate, and informed" standard. *Bushnell, supra*, 750 F.2d at 302 (citing *Jones*). Bushnell had been arrested and convicted for disorderly

---

1. Appellant's state law claims alleged negligence, defamation, false imprisonment, negligent infliction of emotional distress, and state constitutional violations.

conduct and resisting arrest. In exchange for Bushnell's promise to dismiss with prejudice his civil rights claim against public officials, counsel for defendants police, mayor, and city council suggested to the prosecutor that he recommend probation at the sentencing hearing. The Fourth Circuit specifically limited its decision to release agreements negotiated after a determination of guilt but before sentencing, reserving for a later day the issue of the validity of a release exchanged for dismissal of criminal charges negotiated in a noncoercive environment. *Bushnell, supra,* 750 F.2d at 301 n. *. The potential for prosecutorial abuse, exacting releases of related civil rights claims or retaliating for civil prosecution of such cases by threatening a claimant with charges, did not exist in the post-conviction setting according to the *Bushnell* court. *Id.* at 301. Moreover, the court stressed that "the potential for forestalling exposure of possibly unconstitutional or illegal government practices" is not present because the police practices that were the subject of the § 1983 claim were already "exposed to full public inquiry when the dismissal agreement was executed." *Id.*

We decline appellees' invitation to apply the *Bushnell* and *Jones* holdings to the pre-conviction situation involved in the instant case. Rumery executed his covenant not to sue while a criminal charge of witness tampering was still pending. The deputy county attorney was in a position to use the threat of prosecution as a sword while simultaneously shielding public officials from a civil rights claim. The public policy considerations which the *Bushnell* court found inapplicable in the post-conviction setting indeed may be invoked appropriately in the instant case.

### III.

The need closely to scrutinize contracts or agreements in the criminal law context is particularly important because of the special relationship between a criminal prosecution and the public interest. Courts ordinarily are reluctant to set aside a contract provision in an ordinary agreement because, no matter how badly off one of the parties may be, the agreement is likely to benefit both parties in some way. But an agreement in the criminal context is different. Since the object of a criminal prosecution is to vindicate the public, not a private individual, an agreement not to prosecute should be upheld only where the *public* interest is served.[2] It is difficult to envision how release agreements, negotiated in exchange for a decision not to prosecute, serve the public interest. Enforcement of such covenants would tempt prosecutors to trump up charges in reaction to a defendant's civil rights claim, suppress evidence of police misconduct, and leave unremedied deprivations of constitutional rights. We agree with those courts which have found that such releases have the effect of injuring the public interest.

In *Boyd v. Adams,* 513 F.2d 83 (7th Cir.1975), Judge Cummings specifically addressed the validity of a release executed after arrest but before conviction. Ms. Boyd's § 1983 claim against police officers and city officials alleged that the officers stopped and searched automobile passengers, found nothing incriminating, pushed the claimant against the car, used abusive language, and incarcerated the claimant for five hours. Boyd claimed that she suffered a miscarriage as a result.

In addition to finding an inherently coercive environment at the time Boyd executed the covenant not to sue by virtue of the defendant's release on conditional recognizance bail and the inability to pay fines, the Seventh Circuit held that the release was void as against public policy.

---

**2.** We note the distinction between covenants not to sue for deprivations of constitutional rights in the context of a criminal prosecution and our decision today in *Premier Electric International Corp. v. Solar Devices, Inc.,* 778 F.2d 71 (1st Cir.1985), which upholds a covenant not to sue exchanged for the adverse party's voluntary relinquishment of materials sought during the discovery stage of a civil case. The policy considerations which we find controlling here do not apply in *Premier Electric.*

*Boyd, supra,* 513 F.2d at 88.[3]  Similarly, in *Horne v. Pane,* 514 F.Supp. 551, 552 (S.D. N.Y.1981), the court recognized that a defendant forced to choose between filing a civil rights claim and being prosecuted on a criminal charge cannot make an uncoerced choice as a matter of law.

The policy considerations underlying our decision were well stated in *Dixon v. District of Columbia,* 394 F.2d 966, 968–69 (D.C.Cir.1968), a case where the prosecutor filed traffic charges when the defendant reneged on his agreement not to sue.

> "The Government may not prosecute for the purpose of deterring people from exercising their right to protest official misconduct and petition for redress of grievances.
>
> .    .    .    .    .
>
> The major evil of these agreements is not that charges are sometimes dropped against people who probably should be prosecuted.  Much more important, these agreements suppress complaints against police misconduct which should be thoroughly aired in a free society.  And they tempt the prosecutor to trump up charges for use in bargaining for suppression of the complaint."

And in a case where the claimant was arrested for driving under the influence and the prosecutor moved to drop charges if the defendant would stipulate to probable cause, foreclosing a claim against the police, the Ninth Circuit forcefully stated:

> "It is no part of the proper duty of a prosecutor to use a criminal prosecution to forestall a civil proceeding by the defendant against the policemen, even where the civil case arises from the events that are also the basis for the criminal charge.  We do not mean that the prosecutor cannot present such a criminal charge.  What he cannot do is condition a voluntary dismissal of a charge upon a stipulation by the defendant that is designed to forestall the latter's civil case."

*MacDonald v. Musick,* 425 F.2d 373, 375 (9th Cir.1970).  *See also Horne v. Pane, supra.*

In addition to the policy considerations referred to above, we recognize that an exception to the general rule of invalidating such releases would pose administrative problems.  Any exception is likely to promote police or prosecutors' efforts to obtain such releases.  This would require an extensive investigation into whether the release indeed was made free of coercion.  Moreover, the need for an exception to the invalidity of such releases is small.  Where the prosecution is overreaching, acts unreasonably, or has a weak criminal case, the exception is not appropriate.  A release of a civil rights claim might arguably be given effect where the prosecution acts reasonably and has a fairly good case against the claimant.  But in such a case, a good defense to a civil rights claim will exist and the need for a release will not come into play.  Thus, the exception to the general rule of invalidity has the anomalous character of not applying where the police may desire it, and applying where they do not need it.  We hold that an exception cannot easily be shown important enough to outweigh its administrative burdens.

Here, the execution of the covenant not to sue in exchange for a decision not to prosecute Rumery on a witness tampering charge blocked Rumery's claim of police misconduct—conduct allegedly in violation of his constitutional rights.  Although we recognize the latitude which prosecutors necessarily must have in determining whether to prosecute criminal charges, a criminal defendant's decision to assert a civil rights claim is not a factor which the prosecutor should consider.  In such a situation the prosecutor alone is holding the trump card to be played for the protection of those against whom a potential civil rights claim may be asserted.  This finesse is too injurious to the public interest to be sanctioned.  We decline to do so.

---

**3.**  As in *Boyd,* we reject the argument that, because Rumery's lawyer may have been instrumental in negotiating the release, the release should be upheld.  *See Boyd, supra,* 513 F.2d at 88.

## IV.

To summarize: We hold that a covenant not to sue public officials for alleged violations of constitutional rights, negotiated in exchange for a decision not to prosecute the claimant on criminal charges, is void as against public policy. We do not address on this appeal the merits of Rumery's federal civil rights claim. We hold only that appellees' reliance on the affirmative defense of the covenant not to sue cannot stand. We reverse and remand for proceedings consistent with this opinion.

Reversed.