**PREMIER ELECTRIC INTERNATIONAL CORPORATION and Premier Electric Construction Company, Plaintiffs, Appellants,**

v.

**SOLAR DEVICES, INC., Francisco Casas and Enrique Garcia, Defendants, Appellees.**

No. 85–1438.

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1985.

Decided Dec. 2, 1985.

Richard C. Gering, with whom Patrick Mazza and Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., were on brief, for plaintiffs, appellants.

Nestor Duran, with whom McConnell Valdes Kelley Sifre Griggs & Ruiz-Suria, San Juan, P.R., were on brief, for defendants, appellees.

Before COFFIN and BREYER, Circuit Judges, TIMBERS [*], Senior Circuit Judge.

COFFIN, Circuit Judge.

Premier Electric International (Premier) sued Solar Devices (Solar) under the civil penalty provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO) in the District Court for the District of Puerto Rico. Solar moved for summary judgment, based on a release of liability signed by Premier. The district court entered summary judgment against Premier and this appeal followed. For the following reasons, we affirm.

**Factual Background**

Premier was awarded a contract by the United States Department of the Navy for the installation of a solar hot water system at a naval station in Puerto Rico. Premier sought bids from subcontractors for the supply of solar collectors and other necessary materials. After Solar's $280,000 bid was submitted to Premier, Francisco Casas, a Solar vice-president, met with Larry Johansen, a Premier vice-president with responsibility for Premier's operations in Puerto Rico. Johansen offered to award Solar the contract, but only on the condition that Solar would increase its price quotation by $20,400 and provide that amount to Variety Electric Center (Variety), a corporation owned by Johansen and his wife. Solar agreed to this arrangement. Solar received a Premier purchase order for $302,280, and an invoice from Variety for $20,400 for "services rendered". Solar issued a check for $20,400 and forwarded it to Variety through Johansen.

Johansen resigned abruptly from Premier and subsequently Premier began an in-

vestigation concerning Johansen's acts while a Premier officer. As a result of the investigation, Premier sued Johansen in the Superior Court of Puerto Rico. In the Superior Court litigation, an order was issued directing Solar and its accounting firm to produce all records of transactions between Solar and Johansen during 1977 and 1978. Ruben Nigaglioni, counsel for Premier, and William Templeman, president of Premier, visited Solar's offices and spent several hours inspecting documents produced pursuant to the Superior Court order. Nigagliano and Templeman did not identify any evidence against Johansen.

Seeking compensation for losses incurred as a result of Johansen's wrongdoing, Premier filed suit against its insurer, United States Fidelity and Guaranty, in the District Court for the Northern District of Illinois. In connection with discovery in that Chicago litigation, Premier sought the issuance of certain subpoenas. One subpoena was served on Solar's vice-president Casas, calling on him to appear for deposition and to bring with him:

> "[A]ny and all ... check stubs or any other records pertaining to the financial transactions of Solar Devices, Inc. for the fiscal years 1979, 1980, 1981 and 1982 with reference to ... any payments ... disbursements ... commissions or reimbursements made to Larry Johansen ... or to any person, firm or entity for or to the benefit of Larry Johansen, either partially or entirely."

Solar's attorney, Jorge Gonzalez, conferred with Casas and Enrique Garcia, Solar's president, to discuss what documents they thought Premier was seeking. Casas and Garcia told Gonzalez about Solar's payment to Johansen through Variety, and the existence of the Variety invoice and the Solar check for $20,400 made out to Variety for "services rendered". Knowing that he had information that Premier wanted, Gonzalez met with Nigagliano and offered to provide Premier with specific informa-

---

[*] Of the Second Circuit, sitting by designation.

tion incriminating Johansen, if Premier would provide Solar with a full release from liability.

Instead of deposing Casas or examining the documents covered by the federal subpoena, Nigagliano agreed upon the release, the first paragraph of which reads as follows:

"Based on your representation of a full release and strictest confidentiality (except for disclosures that may have to be made in connection with or relating to the legal proceedings against United States Fidelity & Guarantee [sic] Company and/or Mr. Larry Johansen) by your client Premier Electrical Construction Company and its affiliates to us, we hereby voluntarily offer the following information respecting payments by our company to an entity related to Mr. Larry Johanseen [sic] while employed as the principal officer of the Premier Puerto Rico operations arising out of the Roosevelt Roads project."

After Nigagliano agreed to the first paragraph, he was shown the second paragraph, which provided the information Premier wanted:

"Under duress the company agreed to pay a sales commission to Variety Electric Center in consideration for the order at Roosevelt Roads. Said amount was part of the purchase order price and was paid to the entity instructed by Mr. Johansen. Attached is the invoice for services rendered of $20,400 dated October 25, 1978, invoice number 1751, and the certified check dated November 10, 1978, check No. 1217, in the amount of $20,400 that was delivered personally to Mr. Johanseen [sic] prior to his departure from Puerto Rico."

Premier filed this suit against Solar, Casas, and Garcia, alleging that they conspired with Johansen to defraud Premier in violation of RICO. Defendants moved for summary judgment based upon the release given by Premier. The district court entered summary judgment against Premier, and Premier appealed.

### I. Consideration

Premier argues that the district court erred in granting summary judgment for Solar, because the release is unenforceable for lack of valid consideration. According to Premier, the only consideration provided by Solar was the fulfillment of obligations imposed upon it by the federal subpoena. Specifically, Premier claims that the two documents provided by Solar, the Variety invoice and Solar's check, fell squarely within the terms of the federal subpoena that called for the production of documents, and that the other information provided by Solar concerning Casas's discussions with Johansen were covered by the terms of the federal subpoena that called for Casas's deposition.

Premier is correct in asserting that, under federal law, a valid release must be supported by consideration. *Salmeron v. United States*, 724 F.2d 1357, 1362 (9th Cir.1983). The well-settled rule is that performance of a pre-existing legal duty that is neither doubtful nor subject to honest and reasonable dispute is not valid consideration where the duty is owed to the promisor or the public at large. *In re Lloyd, Carr & Co.*, 617 F.2d 882, 890 (1st Cir.1980). There is an important exception, however, to the general rule. The promisor's agreement to do more than he or she honestly and reasonably believes to be required may be sufficient consideration to support a new promise by the promisee. *Meehan v. New England School of Law*, 522 F.Supp. 484, 493 (D.Mass.1981), *aff'd*, 705 F.2d 439 (1st Cir.1983).

We are persuaded that this case is governed by the exception to the general rule, because Solar agreed to do more than it believed it was required to do under the federal subpoena. Premier did not know what it was looking for during the initial stages of its investigation of Johansen. The investigation had produced rumors, but no "hard evidence", of wrongdoing by Johansen. When Premier officials inspected documents in Solar's offices pursuant to the superior court subpoena, they failed to identify any incriminating documents. Al-

though they may have seen the Variety invoice and Solar's check made out to Variety among the other papers, they would not have realized the significance of those papers. Before embarking on a second, perhaps equally unavailing search, Premier was told by Solar officers that they might have the documents Premier needed. Premier obviously was interested in Solar's assistance. Solar offered to identify and provide two documents and to make statements about a potentially illegal transaction with Johansen.

By pinpointing and providing particular documents and statements, Solar offered to do more than it was required to do by the subpoena. It is true that Premier may have gotten this information without too much effort by proceeding with discovery. Instead, however, Premier chose to get the information without any more effort, and this advantage, no matter how small, constitutes consideration supporting the release executed by Premier.

## II. Public Policy

Premier also argues that the release is invalid as against public policy because it is an attempt by Solar to put a price on its compliance with a valid subpoena. Absent a release from liability, Premier contends, Solar would not have complied with the subpoena. In support, Premier relies on several cases in which agreements to provide witnesses with compensation were held unenforceable. *See, e.g., Hamilton v. General Motors Corp.,* 490 F.2d 223 (7th Cir.1973); *Alexander v. Watson,* 128 F.2d 627 (4th Cir.1942).

These cases do not support Premier's argument. Courts predictably refuse to enforce bargains struck by witnesses who demand compensation in exchange for their appearing in court. In declaring such a contract invalid as against public policy, the Seventh Circuit quoted this well-reasoned principle of law:

"As it is the duty of a citizen, when required to do so, to testify in court concerning facts within his knowledge for the compensation allowed him by law, a bargain to pay one who is amenable to process a further sum for his attendance as a witness is invalid both on grounds of public policy and for lack of consideration." *Williston on Contracts* § 1716 (3d ed. 1972), quoted in *Hamilton,* 490 F.2d at 228.

The policy underlying the rule invalidating these agreements is to discourage parties under such a duty from using the threat of nonperformance to extort greater compensation for doing only that which they already were obligated to do. *In re Lloyd,* 617 F.2d at 890. The fact that consideration is lacking gives rise to a court's finding that these witness-compensation agreements are also invalid as against public policy. Because the witnesses only agreed to do what they were legally obligated to do, the possibility of extortionate demands exists.

■ In this case, as we already have discussed, consideration existed to support the parties' agreement. Premier exchanged the release not for compliance with a valid subpoena but for Solar's cooperation in providing evidence against Johansen. Nothing here suggests extortionate demands by Solar, and we therefore decline the invitation to apply the rule of the witness-compensation cases to this situation. Because consideration existed to support the contract, we find that the contract is not invalid as against public policy.

This public policy analysis should be contrasted with the analysis used in *Rumery v. Town of Newton,* 778 F.2d 66 (1st Cir.1985), an opinion also issued today. In *Rumery,* we held invalid as against public policy an individual's agreement not to sue public officials offered in exchange for a prosecutor's decision to forego a criminal prosecution against the individual. Although consideration existed to support the contract in *Rumery,* we still found the contract invalid on public policy grounds because it did not serve the public interest. In that case, we distinguished ordinary contracts from ones in the criminal law context. Because the criminal laws seek to vindicate the public interest, agreements in that context must be scrutinized to ensure

that they serve the interests of the public, not just those of the prosecutor.

In this case, no such searching inquiry need be made. Because this is an agreement between private parties, the existence of consideration on these facts is sufficient to defeat Premier's argument that the contract is invalid as against public policy.

*For the reasons stated above, the judgment of the district court is affirmed.*