804 F.2d 525
 TRANS-STERLING, INC., a Nevada corporation; Karat Inc., a
Nevada corporation; Fremont Hotel, Inc., a Nevada
corporation; Sundance Associates, a Nevada limited
partnership; Sundance Hotel & Casino, Inc., a Nevada
corporation; Allan D. Sachs; and Herbert L. Tobman,
Plaintiffs-Appellants,
v.
Paul A. BIBLE, Individually and as Chairman of the Nevada
Gaming Commission; Raymond C. Avansino, Jr., Individually
and as Commissioner of the Nevada Gaming Commission;
Kenneth R. Gragson, Individually and as Commissioner of the
Nevada Gaming Commission; Jerry Lockhart, Individually and
as Commissioner of the Nevada Gaming Commission; Jack C.
Walsh, Individually and as Commissioner of the Nevada Gaming
Commission; James Avance, Individually and as Chairman of
the State Gaming Control Board; Patricia Becker,
Individually and as a member of the State Gaming Control
Board; and Richard G. Hyte, Individually and as a member of
the State Gaming Control Board, Defendants-Appellees.
 No. 85-2424.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 12, 1986.
Decided Sept. 30, 1986.
Designated for Publication Nov. 17, 1986.
 
 Morton R. Galane, P.C., Thomas J. Tanksley, Las Vegas, Nev., for plaintiffs-appellants.
 James C. Giudici, Deputy Atty. Gen., Gaming Div., Carson City, Nev., David D. Johnson, Chief Dist. Atty. Gen., Ellen F. Whittemore, James R. Chamberlain, Deputy Attys. Gen., Gaming Div., Las Vegas, Nev., for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before NELSON, WIGGINS and NOONAN, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Plaintiffs Trans-Sterling, Inc., Karat, Inc., Fremont Hotel, Inc., Sundance Associates, Sundance Hotel & Casino, Inc., Allan D. Sachs, and Herbert L. Tobman (collectively Trans-Sterling) appeal the district court's grant of defendants' motion for summary judgment in Trans-Sterling's section 1983 action against present and former members of the Nevada Gaming Commission (the Commission) and the State Gaming Control Board (the Board). We affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 In 1983, Trans-Sterling owned and operated several Las Vegas casinos and hotels. In December of 1983, the Board filed a complaint with the Commission[1] alleging that illegal "skimming" of monies was taking place at the Stardust, one of Trans-Sterling's hotel/casinos. It asked ex parte for an immediate order suspending Trans-Sterling's license for the Stardust. The Commission granted the request for immediate suspension of the license, effective on court appointment of a supervisor to take over operation of the Stardust. The Commission scheduled a hearing on the complaint for forty-five days later, in January 1984.
 
 
 3
 Thereafter, Trans-Sterling engaged in legal proceedings designed to obtain a hearing before the Commission concerning the Commission's order suspending Trans-Sterling's license. During the course of these proceedings, an attorney representing Trans-Sterling inquired of Board attorneys as to whether an overall settlement of the dispute was possible. In response, the Board presented a proposed settlement on a take-it-or-leave-it basis. The proposed settlement essentially provided that Trans-Sterling's licenses at all its hotels be revoked (after a stay of no more than 130 days to allow a sale of the properties plus 60 more if there was a buyer on the horizon); that the supervisor would remain in control of the Stardust in the meantime; that Trans-Sterling would pay fines of some $3 million; that Trans-Sterling would waive all legal rights, including the right to challenge the state action and to seek judicial review or appeal, and would release and indemnify the Board and Commission members in their individual and official capacities; and that Trans-Sterling would not have admitted any wrongdoing. Trans-Sterling signed the settlement agreement with the Board on January 5, 1984. On January 10, in a conference call hearing before the Commission, the Commission specifically asked Sachs and Tobman (as representatives of Trans-Sterling) if they signed the stipulation voluntarily and without duress or coercion. With their attorneys at their sides, Sachs answered "Yes" and Tobman answered "Yes ... under the circumstances." One of Trans-Sterling's attorneys specifically asked the Commission to approve the settlement. The Commission approved the settlement.
 
 
 4
 After the settlement's acceptance, Trans-Sterling sought buyers for the hotels and continued to receive the profits from the superviser's operation of the Stardust. The Board expedited its investigation of potential buyers because of the urgency of the sales.
 
 
 5
 On July 10, 1984, eight days before the license revocations were to take effect, Trans-Sterling filed this suit in federal district court against the Board and Commission members under 42 U.S.C. Sec. 1983 (1982), alleging that it was coerced into signing the settlement and giving up its rights and seeking rescission of the settlement agreement, compensatory and punitive damages, and an order restraining the Commission from enforcing the settlement order. The Board and Commission members moved for summary judgment, and the district court granted their motion. Trans-Sterling timely appeals. We have jurisdiction under 28 U.S.C. Sec. 1291 (1982).
 
 MOTIONS
 
 6
 Trans-Sterling has filed three motions that are before the panel. Two are motions to supplement the record on appeal. In the first motion Trans-Sterling seeks to introduce a newspaper article containing later comments by a Commission member about the Commission's workload. Trans-Sterling cites no rule to justify such an enlargement of the record and we find none. The motion is inappropriate and is denied. A second motion brought under Rule 28(j) requests supplementing the record with evidence of action taken by the federal government to dismiss certain counts of indictment against Trans-Sterling, et al. Rule 28(j) permits a party to bring new authorities to the attention of the court; it is not designed to bring new evidence through the back door. The motion is denied. Alternatively, Trans-Sterling asks that this court take judicial notice of the dismissals. It is neither necessary nor desirable to take judicial notice of these purported facts which are, in any event, irrelevant to this decision.
 
 
 7
 Trans-Sterling also moves to strike "unauthorized" portions of the addendum to the appellee's brief that contain a copy of a criminal indictment in another, unrelated case. The indictment does not involve any of the parties to the present case, and is not relevant to the present action in any way that we can discern. We therefore grant the motion to strike.
 
 STANDARD OF REVIEW
 
 8
 This court reviews a grant of summary judgment de novo and will affirm such a grant only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983). All inferences must be drawn in the light most favorable to Trans-Sterling. See Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748, 753 (9th Cir.1979).
 
 DISCUSSION
 
 9
 The only issue we need address in this case is the validity of the waiver (or release) in the settlement agreement.[2] A waiver of a section 1983 claim is valid only if it is voluntary, deliberate, and informed. Jones v. Taber, 648 F.2d 1201, 1203 (9th Cir.1981).[3] Trans-Sterling's only defense to the waiver is that the waiver was produced by duress and coercion and therefore was involuntary.
 
 
 10
 The district court held that Trans-Sterling's allegations of duress and coercion had no basis in the administrative record. It noted that the facts and arguments underlying the duress claim were known to Trans-Sterling well before the signing. It also noted that Trans-Sterling, Sachs, and Tobman were sophisticated and experienced in the business, that they were well represented by counsel, and that they had plenty of time and opportunities to pursue other administrative or judicial remedies for their grievances. The district court therefore concluded that the waiver was voluntary.
 
 
 11
 Trans-Sterling points to two categories of allegedly disputed facts it claims are material to voluntariness. First, Trans-Sterling claims that it was coerced by the appearance of prejudgment against it by the Commission. Trans-Sterling points to the ex parte emergency order by the Commission, several newspaper articles, a passage in the Commission's brief to the Nevada Supreme Court, and the Commission's manner of conducting the hearing as evidence of Trans-Sterling's reasonable belief that it could not get a fair hearing before the Commission and had better accept the settlement offered or lose everything.
 
 
 12
 Even granting Trans-Sterling every favorable inference from the evidence it cites, however, the record simply does not support a reasonable conclusion of prejudgment. The ex parte emergency order was no more a prejudgment of the ultimate merits than a magistrate's finding of probable cause or a judge's issuance of a temporary restraining order. See Withrow v. Larkin, 421 U.S. 35, 49, 95 S.Ct. 1456, 1465, 43 L.Ed.2d 712 (1975). The Commission's brief and its conduct of the hearing necessarily involve a preliminary decision against Trans-Sterling on the emergency order, but Trans-Sterling must read the record in an unreasonable and strained way to infer prejudgment of the merits of the complaint itself. A state administrative body is presumed to be fair, see id. at 47, 95 S.Ct. at 1464, and there is simply no objective evidence that could reasonably lead to the impression of prejudgment.
 
 
 13
 Trans-Sterling also alleges that the Board wrongfully threatened Trans-Sterling and suggested that the Board would, among other things, go after Trans-Sterling's other hotels if Trans-Sterling did not agree to the settlement. The key issue here is whether anything the Board threatened to do was "wrongful"; if not, the Board was merely negotiating to give up certain powers it had under the law (e.g., proceeding against the other hotels, asking the commission to close one or all of the hotels) in exchange for Trans-Sterling's concessions. Trans-Sterling concedes the right of the Board to take the actions it threatened but claims that the threats themselves were wrongful. The argument is not persuasive. The Board's action is directly analogous to a prosecutor negotiating a plea by threatening to reindict a defendant on more serious charges, a procedure without constitutional infirmity. See Bordenkircher v. Hayes, 434 U.S. 357, 364-65, 98 S.Ct. 663, 668-69, 54 L.Ed.2d 604 (1978). The Board's threats, as related by Trans-Sterling, were not wrongful, and they do not constitute coercion or duress beyond that inherent in any plea-bargaining situation.
 
 
 14
 The cases Trans-Sterling relies on involve primarily prisoners required to sign releases of civil rights actions in exchange for release from custody. See, e.g., Jones v. Taber, 648 F.2d at 1205-06. In each case, either the initial detention was wrongful or the prisoner was unaware of the extent of the rights he was waiving. In the present case, the Board's actions were authorized by statute and Trans-Sterling was well aware of the consequences of the agreement. We find that Trans-Sterling's signing of the settlement agreement was voluntary and that its waiver of the right to bring this action is therefore valid.
 
 CONCLUSION
 
 15
 In summary, viewing the record in a light most favorable to Trans-Sterling, we conclude that there is no material issue of disputed fact as to the validity of Trans-Sterling's waiver of rights contained in the stipulation. We agree with the district court's conclusion that this action by Trans-Sterling was simply an attempt to avoid or delay complying with an agreement that Trans-Sterling entered into voluntarily and with its eyes open. Compare Aladdin Hotel Corp. v. Nevada Gaming Commission, 637 F.2d 582, 583 (9th Cir.1980) (reversing district court decision in which casino owner threatened with revocation under settlement agreement obtained stay from district court). The district court's grant of summary judgment is AFFIRMED.
 
 
 
 [1]
 Under Nevada law, the Board acts as prosecutor and grand jury, investigating and bringing complaints for alleged violations. The Commission acts as judge and jury, hearing complaints and responses and making the final decision on violations and punishment
 
 
 [2]
 Because we conclude that the waiver of all legal rights against the Board and Commission members is valid, we need not discuss the rest of Trans-Sterling's allegations because Trans-Sterling waived its rights to bring suit based on them
 We also need not reach the district court's alternative grounds for summary judgment (laches and estoppel) or the alternative arguments advanced by the defendants but not ruled on by the district court (unclean hands and absolute or qualified immunity).
 
 
 [3]
 Trans-Sterling's citation of Rumery v. Town of Newton, 778 F.2d 66 (1st Cir.1985) (holding that a covenant not to sue public officials for alleged violations of constitutional rights, negotiated in exchange for a decision not to prosecute the claimant on criminal charges, is void as against public policy), cert. granted, --- U.S. ----, 106 S.Ct. 1633, 90 L.Ed.2d 179 (1986), does not reflect the law of this circuit. The court in Rumery specifically distinguished its approach from our approach in Jones v. Taber. Rumery, 778 F.2d at 68-69. In addition, the waiver here was negotiated as part of a settlement of a civil action, not, as in Rumery, the dismissal of a criminal proceeding. This distinction also argues against its application here