Tracy Lynn PENN, Plaintiff,

v.

CITY OF MONTGOMERY,
et al., Defendants.

Civil Action No. 01–F–955–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 17, 2003.

Frank H. Hawthorne, Jr., Hawthorne & Hawthorne, Norman Gunter Guy, Jr., Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, Michael Stephen Harper, Harper & Smith, PC, Tallassee, AL, fo plaintiff.

Charles A. Everage, Rushton, Stakely, Johnston & Garrett, P.A., Walter R. Byars, Steiner Crum & Baker, Howard Allyn Mandell, Charles A. Everage, City of Montgomery, Legal Division, H. Lewis Gillis, John W. Adams, Jr., Pamela R. Hig-

gins, Christina H. Jackson, Monet McCorvey Gaines, Kenneth Lamar Thomas, Michael Douglas Babb, Thomas, Means, Gillis & Seay, PC, Montgomery, AL, Valerie L. Acoff, Raymond Lymon Johnson, Jr., James L. Richey, Thomas, Means, Gillis & Seay, PC, Birmingham, AL, for defendants.

### *MEMORANDUM OPINION*

FULLER, District Judge.

Plaintiff filed suit against the City of Montgomery in August of 2001. She alleges that defendants deprived her of certain rights provided to her by the Fourth and Fourteenth Amendments to the United States Constitution by her arrest on a domestic violence charge. Plaintiff seeks a remedy for the alleged violations of her constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiff also seeks additional relief pursuant to various tort theories under Alabama law and has a claim for recision of a contract into which she entered as part of an agreement which resulted in the dismissal of the charge against her.

This cause is presently before the Court on the following motions: Defendants' Motion for Summary Judgment (Doc. # 112), Defendants' Motion to Strike the Affidavit of Tracy Lynn Penn Submitted in Opposition to Defendants' Motion for Summary Judgment (Doc. # 126), Defendant City of Montgomery, Defendant Police Officer Guinn R. Timmerman, and Defendant Officer Christopher Howard's Joint Motion to Dismiss Plaintiff's Complaint (Doc. # 57), and the Motion for Partial Summary Judgment (Doc. # 109) filed by Plaintiff. For the reasons that follow, the Defendants' Motion for Summary Judgment will be GRANTED as to Plaintiff's federal claims. Defendants' motion to strike and motion to dismiss will be DENIED as MOOT. Plaintiff's Motion for Partial Summary Judgment is DENIED as to her federal claims.

Finally, Plaintiff's state law claims will be DISMISSED without prejudice.

### JURISDICTION AND VENUE

Jurisdiction over Plaintiff's federal claims is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights). Jurisdiction over Plaintiff's remaining state law claims is proper under 28 U.S.C. § 1367 (supplemental jurisdiction). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

### SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by

[his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## PROCEDURAL BACKGROUND

When Plaintiff filed suit in August of 2001, the only named defendant to the action was the City of Montgomery. The original complaint (Doc. # 1) contained two counts against the City of Montgomery: Count I which was brought pursuant to 42 U.S.C. §§ 1983 and 1988 for alleged violations of Plaintiff's Fourth and Fourteenth Amendment Rights and Count II which was brought pursuant to Alabama tort law for negligent supervision and training.

Plaintiff's Amendment to Complaint (Doc. # 49), which was filed in September of 2002, added new defendants and claims to the action. The new defendants were Officer Howard, Officer Timmerman, and City Attorney Calvin Williams (hereinafter "Williams"). Officer Timmerman and Officer Howard are the City of Montgomery police officers alleged to have been involved in Plaintiff's arrest. Williams was the prosecutor who agreed to dismiss the charge against Plaintiff in exchange for her executing a release of any claims she may have had against the City of Montgomery and several of its police officers. The following new claims Plaintiff added by the Amendment to Complaint were brought pursuant to 42 U.S.C. §§ 1983 and 1988: Count III against Officer Howard and Officer Timmerman and Count X against Williams. The remaining claims added (Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, and Count XI) were premised on a variety of tort theories pursuant to Alabama law, except for Count XI which is a claim pursuant to Alabama law for rescission of the release.

In November of 2002, Plaintiff again amended her Complaint; this amendment revised the allegations of Counts I, III, and X. *See* Doc. # 75. Plaintiff subsequently dismissed her claims against Williams. *See* Docs. # 99 & # 102. Consequently, Count X, which was directed solely at Williams is no longer a viable claim in this action.

## FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to Plaintiff, the non-moving party, establish the following relevant facts:

On the evening of September 18, 2000, Plaintiff, a divorced woman, was at her home in Montgomery, Alabama, with her two young children. According to Plaintiff, her former husband entered her home by breaking in through her bedroom window. Once in the house, Plaintiff's former husband verbally and physically assaulted her. Plaintiff struck her former husband with her fist and also with an object which

she believed to be a mop in an effort to defend herself and her children and in an attempt to force her former husband to leave her home. During this dispute, one of Plaintiff's children followed her mother's instructions and called the 911 operator seeking police assistance. The child announced that she had called the police, and upon hearing this, Plaintiff's former husband left the house.

Within minutes of the 911 call several police officers employed by the City of Montgomery arrived at Plaintiff's home. Officer Howard and Officer Timmerman were among the officers at the scene. The police officers interviewed Plaintiff and her former husband separately. Plaintiff told police that her former husband had struck her and left the house. Police also spoke with the child who had called 911.

The police officers handcuffed Plaintiff and arrested her on a third degree domestic violence charge. Plaintiff was transported to jail where she remained for several hours until she was released on bond. At no time after her release on bond was Plaintiff returned to custody or jailed. Police officers also arrested and charged Plaintiff's former husband with third degree domestic violence.

The day after her arrest, Plaintiff conferred with the attorney who represented her in connection with her divorce, Evans Marshall Carmichael (hereinafter "Carmichael"). Carmichael advised Plaintiff that she should file a civil lawsuit against the City of Montgomery and the police officers involved for her arrest. It is undisputed that Plaintiff did not follow this advice until this lawsuit was filed in August of 2001.

Shortly after her arrest, Plaintiff retained the services of an attorney named John Alley, Jr. (hereinafter "Alley") to represent her in the criminal proceedings relating to the domestic violence charge. Plaintiff paid Alley $600.00 to represent her in the criminal proceedings. Prior to the date set for the adjudication of the domestic violence charge, Plaintiff met with Alley at least twice and consulted with Alley on the telephone on two or three other occasions between her release on bond and her April 3, 2001 court date. Alley explained to Plaintiff what she could expect in the municipal court proceedings. He explained her right to proceed to trial and present testimony and the availability of appeal of any adverse ruling to the Circuit Court of Montgomery County for a new trial before a jury. Alley advised Plaintiff about the type of questions she could expect at trial and the possible sentences she could face if she lost, including the fact that the charge she faced had a minimum sentence of imprisonment. Alley obtained a copy of the tape recording of the 911 call which had brought the police to Plaintiff's home and played it for Plaintiff so that they could assess some of the information which was likely to be brought out at trial. Although Alley represented Plaintiff only in connection with the criminal charges, he was aware that there was a possibility that Plaintiff was going to pursue a civil action for false arrest or malicious prosecution and that she had consulted with an attorney named Frank Hawthorne, who shares office space with Alley, regarding such a suit.

Both Alley and Carmichael accompanied Plaintiff to her court appearance on April 3, 2001. Prior to the commencement of the proceedings, an attorney who was representing Plaintiff's former husband in the defense of the domestic relations charge against him arising out of the September incident approached Alley and said that the charges against both Plaintiff and her former husband could be dropped if they were both willing to sign a release. Plaintiff discussed the ramifications of this option with her counsel outside of the courtroom. Plaintiff was *not sure what she*

wanted to do at first and wanted more time to think about it. After they went back into the courtroom, Williams, who was acting as the prosecutor for the City of Montgomery, approached Alley and asked what his client was going to do. Alley indicated that they were still not sure. Plaintiff and her attorneys went back outside to discuss the matter further.

During these conversations, Alley carefully explained Plaintiff's options to her. He did not tell her whether to sign the release; rather, he explained that if she signed the release she would no longer face the possibility of conviction after a trial and mandatory jail time or the concerns about the need for appeal if she lost. He also explained that if she signed the release, the release stated that she would not be able to sue to the City for her arrest.

Eventually Plaintiff decided that she would sign the release of her civil claims in return for the dismissal of the criminal charges against her. At the time she was mulling over her decision, Plaintiff articulated a variety of concerns. She was worried about the possibility of having to incur additional costs if she proceeded to trial in the matter. Plaintiff had concerns about having to testify, and she was reluctant to go through a trial and to testify against her ex-husband. It was upsetting to her just to have to be in the same courtroom with him after the incident at her home in September. She was concerned about the possibility of going to jail and very anxious about who would care for her children if she went to jail. Finally, she had concerns about her ex-husband's ability to continue child support payments if *he* was sent to jail on the charge he faced. Despite these various concerns, Plaintiff testified that she signed the release because she felt that she had no other choice because if she didn't sign it she would end up in jail.

It is undisputed that on April 3, 2003, Plaintiff and her husband signed releases. Plaintiff's signature on her release was witnessed by Alley and Carmichael. By its terms, the release Plaintiff signed indicates that Plaintiff was releasing forever the City of Montgomery, Officer Howard, and Officer Timmerman, from all actions, causes of action, claims and demands that she had against them by reason of their civil liability to her for police misconduct up to and including the date of the release. The release specifies that in exchange for the release, the City of Montgomery will forebear criminal prosecution against Plaintiff. The release itself also includes a verification that Plaintiff has carefully read it before signing it and that she was acting of her own free will without influence from any of the released parties. Plaintiff contends that she elected not to read it before she signed it. There is no evidence before the Court that anyone did anything to prevent Plaintiff from reading the release before she signed it, and it is clear from the evidence before the Court that Plaintiff's counsel did carefully explain the document to her before she signed it.

Plaintiff and her former husband signed their releases prior to the commencement of their respective trials. As the negotiations were taking place in the vicinity of the courtroom and because Williams had informed him of the negotiations, the judge was aware of the offer Williams made to dismiss the charges in exchange for the releases. Indeed, the judge asked Alley to serve as a witness to the signature of Plaintiff's former spouse on his release because his counsel was occupied with another matter when it was being signed. After Plaintiff signed the release, Alley gave it to the judge and the parties informed him that Plaintiff and her husband had signed releases in exchange for the dismissal of the charges against them. Pursuant to the agreement, Williams

caused the domestic violence charge against Plaintiff to be *nolle prosequi*. The same was done for the charge against the Plaintiff's former husband.

The evidence before the Court is undisputed that Williams had no contact with Plaintiff outside the presence of her counsel. Neither the judge, nor Williams tried to intimidate Plaintiff or put any pressure on her to sign the release. There is no testimony before this Court which would support a finding that Williams did anything unethical in negotiating the release with Plaintiff's criminal counsel. Moreover, neither Officer Timmerman, nor Officer Howard had any contact with Plaintiff or with Williams in connection with the release agreement.

Neither Alley, nor Carmichael had any reason to suspect that Plaintiff had any mental deficiencies at the time Plaintiff signed the release based on their course of dealings with her. Plaintiff does not claim that she was unable to comprehend the consequences of the release she signed or unable to read its contents prior to signing it. She is literate. Indeed, Plaintiff has some experience with releases which she has obtained from her work as an office manager for a physician.

## DISCUSSION

### A. Federal Claims

Counts I and III are the sole remaining claims in this action brought pursuant to federal law. Consequently, these are the only claims over which this Court has original subject matter jurisdiction. These counts seek a remedy for alleged violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983 and 1988.

The parties have addressed a variety of issues and arguments in their briefs in support of and in opposition to the pending dispositive motions. The logical threshold issue is the validity of the release Plaintiff signed. Defendants assert correctly that if the release is valid, all defendants are entitled to summary judgment on Plaintiff's claims because all claims made in the lawsuit are within the scope of the release. If, on the other hand Plaintiff is correct in her contention that the release is not valid, then Plaintiff's claims must survive the remaining grounds advanced by Defendants in support of summary judgment. Thus, the Court will first address the validity of the release under federal law.

██ To the extent that Defendants argue that the release is a waiver of Plaintiff's right to sue pursuant to a federal statute, the "question whether policies underlying that statute may in some circumstances render that waiver unenforceable is a question of federal law." *Town of Newton v. Rumery*, 480 U.S. 386, 392, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987). Thus, the validity of the release of federal statutory claims, such as Plaintiff's claims pursuant to Section 1983, is determined by reference to federal common law, not state law.[1] The Court notes that the sole basis for Plaintiff's contention that the release is invalid is the law and policies of the State of Alabama. Plaintiff has not made a single argument or identified a single fact with respect to the release which is relevant to the analysis of the validity of the waiver under federal law. *Id.* The Supreme Court of the United States has decreed that in this inquiry, [t]he relevant principle is well established: a promise is

---

1. The question of the validity of the waiver of Plaintiff's claims pursuant to state law is governed by state law. The Court notes that the sole basis for Plaintiff's contention that the release is invalid is the law and policies of the State of Alabama. Plaintiff has not made a single argument or identified a single fact with respect to the release which is relevant to the analysis of the validity of the waiver under federal law.

unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by the enforcement of the agreement. *Id.*

The Supreme Court announced this general principle in a case in which it held that a release-dismissal agreement was enforceable. *See, generally, Rumery,* 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405. In *Rumery,* the plaintiff had been charged with the state-law felony of tampering with a witness. *Id.* at 390, 107 S.Ct. 1187. An attorney representing Rumery immediately threatened to bring suit and warned the prosecutor to drop the charge against Rumery. *Id.* Concerned about the harm which testifying might cause the key witness against Rumery, the town prosecutor agreed to dismiss the charge against Rumery. *Id.* In exchange for the town prosecutor's agreement to drop the witness tampering charges, Rumery agreed to release his potential civil rights claims against the town officials. *Id.* At 390–91. Despite this agreement, Rumery filed suit against the officials within a year after the dismissal of the witness tampering charges against him and his signing the release-dismissal agreement. *Id.* at 391, 107 S.Ct. 1187. Those Rumery sued sought dismissal of the action on the ground that the suit was barred by the release-dismissal agreement. *Id.* Rumery argued that the agreement was unenforceable because it violated public policy. *Id.* at 391, 107 S.Ct. 1187. Finding that the release dismissal agreement was voluntary, deliberate, and informed, the district court dismissed the case. *Id.* On appeal, the Court of Appeals for the First Circuit reversed and held that release-dismissal agreements which bargain away the right to bring suit pursuant to 42 U.S.C. § 1983 are *per se* invalid as against public policy because they tempt prosecutors to trump up charges in reaction to possible civil rights suits and to suppress evidence of police misconduct, thereby leaving constitutional violations

unremedied. *See Rumery v. Town of Newton,* 778 F.2d 66, 69 (1st Cir.1985), *rev'd,* 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987).

In a 5–4 decision, the Supreme Court reversed the ruling of the First Circuit and held that release-dismissal agreements are not *per se* invalid. *See* 480 U.S. at 392, 107 S.Ct. 1187. Looking to federal common law for the policies underlying the waiver of rights conferred by a federal statute, the Supreme Court adopted a case-by-case approach to determining whether a release-dismissal agreement should be enforced, balancing the interests in its enforcement against the public interests harmed. *Id.* Justice Powell wrote for the majority that although some defendants may feel coerced into giving up meritorious claims, the possibility of coercion by itself does not justify an outright ban on such agreements. *Id.* at 393–94, 107 S.Ct. 1187. After satisfying itself that Rumery voluntarily waived his right to sue, that there was no evidence of prosecutorial misconduct, and that enforcement of the agreement would not adversely affect the public interest, the Court upheld the dismissal of Rumery's suit pursuant to Section 1983 on the basis of the release. *Id.* at 398, 107 S.Ct. 1187.

Justice O'Connor concurred in part and in the judgment. *Id.* at 399, 107 S.Ct. 1187. In her concurrence, Justice O'Connor emphasized that because of the great potential for prosecutorial misconduct and coercion it is the burden of the public officials to "prove" that "a particular release executed in exchange for the dismissal of criminal charges was voluntarily made, not the product of prosecutorial overreaching, and in the public interest." *Id.* at 401, 107 S.Ct. 1187 (O'Connor, J., concurring in part and concurring in the judgment). She noted that in addressing voluntariness, courts should consider the

knowledge and experience of the defendant, the severity of the criminal charges, whether a "legitimate criminal justice objective" supports the release, whether the defendant was represented by counsel, and whether the execution of the release was judicially supervised. *Id.* at 401–02, 107 S.Ct. 1187.

■ Thus, in evaluating the release-dismissal agreement, this Court will examine whether Defendants have sufficiently shown that the agreement is enforceable because (1) it was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement would not adversely affect the relevant public interests.

■ On the facts before this Court, it is undisputed that Plaintiff's agreement to the release-dismissal agreement was voluntary. At the time Plaintiff entered into the agreement, she was relatively sophisticated, able to understand her options, represented by able counsel who explained the ramifications of the agreement to Plaintiff, and free from the potentially coercive impact of considering the agreement while incarcerated because she was not in custody when the agreement was made. Plaintiff had sufficient time to consider the agreement before signing it. Indeed, prior to signing it she weighed several competing concerns and had more than one conversation with her attorney. While Plaintiff was informed that the charge she faced had a mandatory jail sentence, it was a misdemeanor charge, not a felony. Finally, the agreement was formed with some knowledge and supervision by the court before which the charge was pending. Finally, Plaintiff benefitted from this agreement. Not only did it guarantee that she would not face the possibility of incarceration, but also it freed her from having to testify against her husband and improved the possibility that her husband would be able to continue to meet his

financial obligation to provide financial support to their children.

While Plaintiff attempts to argue that she signed the release-dismissal agreement under duress, she admits that her own fear of incarceration, not the actions of others, caused her to sign the agreement. The Supreme Court has rejected this type of blanket reliance on an assertion that release-dismissal agreements are in themselves inherently coercive. *Rumery,* 480 U.S. at 393, 107 S.Ct. 1187.

> The risk, publicity, and expense of a criminal trial may intimidate a defendant, even if [she] believes [her] defense is meritorious. But this possibility does not justify invalidating all such agreements. In other contexts criminal defendants are required to make difficult choices that effectively waive constitutional rights. For example, it is well settled that plea bargaining does not violate the Constitution even though a guilty plea waives important constitutional rights. We see no reason to believe that release-dismissal agreements pose a more coercive choice than other situations we have accepted.

*Id.* at 393, 107 S.Ct. 1187 (internal quotations omitted). The record in this case, viewed in the light most favorable to Plaintiff, shows sufficient voluntariness to support the validity of the release-dismissal agreement.

There is simply no evidence from which this Court could find that this release was the product of prosecutorial misconduct or overreaching. The first obvious piece of evidence in support of a finding that there was no prosecutorial misconduct is Plaintiff's dismissal of her claims in this lawsuit against the prosecutor, Williams. Even if those claims had not been dismissed, the Court notes that there is no evidence before the Court that the prosecution was brought against Plaintiff was retaliatory.

Indeed, the criminal charges against Plaintiff were brought before she articulated any threat or desire to sue the City of Montgomery or any of its agents. Thus, the criminal charges cannot be said to be retaliatory or improperly trumped up for the purpose of obtaining leverage against Plaintiff. Moreover, there is no evidence that Williams offered the release-dismissal agreement to cover up what he believed to be civil rights violations.

The evidence before this Court supports a finding that the release-dismissal agreement does not adversely affect the relevant public interests. First, the release-dismissal agreement promotes the public interest of rationing scarce prosecutorial resources by avoiding the necessity in this case of two trials and provides the prosecutor with flexibility to manage his cases. Additionally, the agreement benefits the interests of the City of Montgomery and its employees by preventing the defendants and its employees from being diverted from their normal duties and incurring the substantial burden of defending against lawsuits. *See, e.g., Rumery,* 480 U.S. at 395–96, 107 S.Ct. 1187.

Application of the balancing test announced in *Rumery* to the facts of this case compels a conclusion that the release signed by Plaintiff is valid. Thus, Plaintiff has waived her right to pursue any federal claims against the City of Montgomery, Officer Timmerman, and Officer Howard and they are entitled to summary judgment on all of her federal claims. As previously noted, Plaintiff did not argue that the release was invalid under the applicable federal standards. Instead, Plaintiff claimed that the release was invalid under Alabama law because the agreement constituted the crime of compounding. Although, the Court finds that this argument is not relevant to the analysis of the validity of the release-dismissal agreement Plaintiff signed as a waiver of her federal

claims against Defendants, the Court will nevertheless briefly address the merits of her argument.

■ First, the Court is not persuaded that the facts of this case establish that the entry into release-dismissal agreement constitutes the kind of conduct which the Alabama Code has said constitutes the crime of compounding. Alabama Code Section 13A–10–7(c) makes it a Class A misdemeanor for a person to commit the crime of compounding. Section 13A–10–7(a) specifies that

> [a] person commits the crime of compounding if he gives or offers to give, or accepts or agrees to accept, any pecuniary benefit or other thing of value in consideration for:
>
> (1) Refraining from seeking prosecution of a crime; or
>
> (2) Refraining from reporting to law enforcement authorities the commission or suspected commission of any crime or information relating to the crime.

Ala.Code § 13A–10–7 (a) (1975). Interestingly, the statute criminalizes both the offer and the acceptance of value in the prohibited contexts. Thus, by arguing that the City Attorney committed the crime of compounding by accepting a thing of value, namely the dismissal of Plaintiff's potential causes of action against the City of Montgomery and the police officers involved in her arrest, in exchange for dismissing the criminal charges against Plaintiff, Plaintiff is also necessarily arguing that by accepting that offer she too committed the crime of compounding. Nevertheless, Plaintiff apparently finds it in her best interest to so argue.

The Court is not persuaded that a prosecutor's decision to dismiss pending criminal charges constitutes "refraining from seeking prosecution of a crime" or "refraining from reporting to law enforcement authorities the commission or sus-

pected commission of any crime or information relating to the crime." Indeed, Plaintiff cites no case in which similar actions have been held to be the crime of compounding. Moreover, the few reported cases arising under this statute or its predecessor do not involve claims that a prosecutor committed conduct within the definition of the crime of compounding. Indeed, at least one federal appellate court has stated that the Supreme Court's decision in *Rumery* carves out an exception to the crime of compounding where a prosecutor offers to dismiss criminal charges in exchange for a release of civil claims. *See Fomby–Denson v. Dep't of the Army*, 247 F.3d 1366, 1377 n. 9 (Fed.Cir.2001).

Moreover, the Alabama Supreme Court appears also to have acknowledged such an exception by upholding a release dismissal agreement. *See, e.g., Gorman v. Wood*, 663 So.2d 921 (Ala.1995) (affirming dismissal of lawsuit against law enforcement officers and prosecuting authorities by an arrestee who had signed a general release of his claims relating to his arrest and holding that the release was valid). Given that Plaintiff's sole basis for attacking the validity of the release in this case is to argue that it is void as against public policy because it constitutes a violation of Alabama law prohibiting compounding, this Court's determination that the release in these circumstances does not constitute the Alabama prohibition on compounding disposes of Plaintiff's arguments against the enforcement of the release. This means that the Court need not also address whether the cases on which Plaintiff relies for her argument that a contract in violation of any Alabama law is void or whether *Treadwell v. Torbert*, 122 Ala. 297, 25 So. 216 (1899) would require a finding that no compounding occurred because the

charges against Plaintiff were without merit. The Court does note, however, that it is far from clear that either of these issues would be likely to be decided in Plaintiff's favor had the Court been required to reach them.

In sum, there are no genuine issues as to any of the facts material to the validity of the release Plaintiff signed and under the appropriate legal standard for evaluating that release, Defendants are entitled to judgment as a matter of law because the release is valid. Consequently, Defendants' Motion for Summary Judgment on all of Plaintiff's federal claims will be GRANTED and Plaintiff's Motion for Partial Summary Judgment will be DENIED. In light of these holdings, Defendant City of Montgomery, Defendant Police Officer Guinn R. Timmerman, and Defendant Officer Christopher Howard's Joint Motion to Dismiss Plaintiff's Complaint (Doc. # 57)and Defendants' Motion to Strike the Affidavit of Tracy Lynn Penn Submitted in Opposition to Defendants' Motion for Summary Judgment (Doc. # 126)[2] will be DENIED as MOOT.

### B. State Law Claims

Plaintiff also claims that the City and the Officers are liable under Alabama law and bring numerous claims pursuant to tort and contract theories in Counts II, IV, V, VI, VII, VIII, IX, and XI. This Court has supplemental subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Section 1367(c)(3) provides that a "district court may decline to exercise supplemental jurisdiction over a claim if ... the district court has dismissed all claims over which it has original jurisdiction." Because the federal claims over which this Court had original jurisdiction have now been resolved against Plaintiff,

---

**2.** None of the testimony challenged by the motion to strike is in any way relevant to the issues decided by this Court.

the Court will dismiss the state law claims, albeit without prejudice. *See, e.g.,* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This dismissal should not work to Plaintiff's disadvantage should she elect to bring suit in state court because the period of limitations for any of these claims is tolled during the pendency of this action. *See* 28 U.S.C. § 1367(d).

A separate judgment will be entered consistent with this Memorandum Opinion.

## JUDGMENT

In accordance with the Memorandum Opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the Court as follows:

(1) Defendants' Motion for Summary Judgment (Doc. # 112) filed by the City of Montgomery, Officer Timmerman, and Officer Howard on May 5, 2003 is GRANTED as to Plaintiff's federal claims (Count I and Count III).

(2) The Motion for Partial Summary Judgment (Doc. # 109) filed by Plaintiff on May 5, 2003, is DENIED.

(3) The Defendant City of Montgomery, Defendant Police Officer Guinn R. Timmerman, and Defendant Officer Christopher Howard's Joint Motion to Dismiss Plaintiff's Complaint (Doc. # 57)and Defendants' Motion to Strike the Affidavit of Tracy Lynn Penn Submitted in Opposition to Defendants' Motion for Summary Judgment (Doc. # 126) are DENIED as MOOT.

It is further ORDERED that Plaintiff Penn's remaining state-law claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367.

It is further ORDERED that costs are taxed against Plaintiff Penn, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket sheet as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.